In re Howard Morten HARRIS, Debtor.

Bankruptcy No. 94–7386–9P7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 27, 1995.

Jeffrey W. Leasure, Ft. Myers, FL, for Debtor.

Pavese, Garner, Haverfield, Dalton,. Harrison & Jensen, Ft. Myers, FL, for Movant.

Diane L. Jensen, Trustee, Ft. Myers, FL.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

In this Chapter 7 liquidation case, Howard Morten Harris (Debtor) claimed as exempt his interest in Howard M. Harris M.D., P.A. Profit Sharing Plan (Plan). On October 6, 1994, Bankers Trust Company, as Trustee for Marine Contract Corporation, Marine Contract Trust (Bankers Trust), challenged the Debtor's claim of exemption on the grounds that the Profit Sharing Plan is not an ERISA-qualified Plan and, in any event, the claim as asserted did not comply with requirements of Fla.Stat. § 222.21. In addition, Bankers Trust contended that the Debtor's reliance on the Florida Statute cannot be recognized because the "Florida Statutes are unconstitutional" (sic). On October 6th, Bankers Trust amended its Objection and challenged the claimed exemption on the additional grounds that "the Profit Sharing Plan is not a Plan eligible under the Debtor's claimed exemptions which include Fla.Stat. § 222.201; Fla.Stat. § 222.21; 29 USC §§ 1056 and 1065 (sic) and Spend Thrift Trust."

On October 24, 1994, Diane L. Jensen (Trustee) also filed an Objection to the Debtor's claim of exemptions and in addition to the grounds urged by Bankers Trust contends that the exemptions were not claimed in conformity with the requirements of Fla. Stat. § 222.06; and that the claimed exemptions in the personal property exceeded the maximum which could be claimed under the Statute.

On October 27, 1994, this Court directed the Debtor to respond to both Objections. On November 7, 1994, the Debtor filed his Response to the Trustee's Objection and while he consented to the Trustee's Objection

concerning his claim of exemption of the personal property, stated that he was unable to respond to the Trustee's Objection concerning the interest in the Profit Sharing Plan. On December 1, 1994, the Debtor also filed his response to the Objection filed by Bankers Trust and stated the same.

On April 28, 1995, the Trustee filed her Motion for Summary Judgment directed to the claim of exemption in the Profit Sharing Plan, contending that there are no genuine issues of material fact and she is entitled, based on the undisputed facts, to a judgment in her favor as a matter of law. On June 8, 1995, Bankers Trust filed its Notice of Joining in the Motion For Summary Judgment filed by the "United States Trustee" (sic). It should be noted that Ms. Jensen is not the United States Trustee but a member of the official Trustee panel established by the United States Trustee. On May 5, 1995 the Debtor also filed his Motion For Summary Judgment conceding for the purpose of his Motion that there are indeed no genuine issues of material fact but that this is the extent of the concession and, of course, he contends that he is entitled to judgment in his favor as a matter of law.

The Trustee, Bankers Trust, and the Debtor filed a joint Stipulation setting forth the facts which are without dispute, which was attached to the Trustee's Motion for Summary Judgment as Exhibit A. The Stipulation contains 59 separate facts which are not in dispute. Due to the length of the Stipulation which contains several undisputed facts which are redundant and not really relevant, it would not be helpful to recite here all the undisputed facts verbatim. Rather, this Court is satisfied that a summary of the facts by categories agreed upon by the parties should be sufficient. Nevertheless, the entire Stipulation will be incorporated by reference and deemed to be part of this Court's consideration of the Motions For Summary Judgment.

## UNCONTESTED GENERAL FACTS

It is stipulated that the Debtor claimed his interest in the Howard M. Harris M.D.P.A. Profit Sharing Plan (the Plan) pursuant to Fla.Stat. §§ 222.201, 222.21 and 29 U.S.C.

§§ 1056 and 1065 (sic); that the Trustee timely filed an Objection to the claim of exemption; that the Debtor is the sole shareholder of the P.A.; that until May 1994, or one month before the Debtor filed his Voluntary Petition, he was a co-trustee of the Plan with his wife Carol (Ms. Harris), who is now the sole trustee of the Plan; that Ms. Harris was at one time an employee of the P.A. In addition, the parties also agreed that the Plan was maintained pursuant to an Adoption Agreement and Prototype Trust Agreement, which received a favorable Letter of Determination from the Internal Revenue Service which stated, however, that the Letter was not a ruling or determination that the Plan per se qualified under § 401(a) of the Internal Revenue Code; that the Plan had never been examined or audited for operational compliance with the applicable provisions of the Internal Revenue Code. Lastly, it is agreed that the P.A. ceased doing business in February, 1991.

## PLAN INVESTMENTS

The Parties stipulated that substantially all assets of the Plan were invested in undeveloped land, the investments were made via land trusts or limited partnerships and all assets were not liquid or readily transferable. It is further stipulated that the Debtor had no experience in land investments and did not seek any independent professional advice concerning investment decisions; that with regard to valuing the Plan assets, there are no appraisals of the properties and the distribution to former Plan participants were made on the account balance, based on guesstimates; that the Plan incurred liabilities in connection with these investments and because the Plan had no ready funds it had to borrow funds to meet the costs of maintenance and operating expenses of the Trust assets and to pay the continuing obligations incurred in connection with the acquisitions of the Plan assets. Lastly, it is agreed that the Plan purchased a diamond ring from a member of the Debtor's family; that the diamond ring is no longer available; that the Debtor has no documentation to establish that it was sold and no accounting of the funds claimed to have been obtained from the

alleged sale; and while the Plan authorized the purchase of life insurance on the lives of the Plan participants, the only life insurance that was ever purchased was on the life of the Debtor.

## PLAN LOANS

It is agreed and stipulated that between 1986 and 1990 the Debtor borrowed more than $125,000 from the Plan; that none of these loans are evidenced by documentation which were either notarized or witnessed; that between 1990 and 1991 the Debtor borrowed from the Plan more than $91,000; that the Debtor has not repaid any of these loans and the Plan has not taken any action to enforce the Promissory Notes executed by the Debtor in connection with these loans, and only the Debtor obtained loans from the Plan. It is stipulated also that the Plan only authorized loans to participants up to $50,000.

## PLAN DISTRIBUTIONS—IN GENERAL

It is also stipulated that when the P.A. ceased doing business it had six employees, four of whose interest in the Plan was vested. However, they did not receive distribution at that time because the Plan had no funds to distribute due to the fact that all available funds were loaned to the Debtor, and the distribution made to the Debtor. In addition, it is stipulated that after the distribution to the Plan participants in 1993 only the Debtor and one other person remained participants of the Plan; that for the purpose of distribution the Plan assets were valued lower than they were valued on the Financial Statements of the Plan. (See ¶ 44 of the Stipulated Facts).

## PLAN DISTRIBUTIONS TO THE DEBTOR

It is stipulated that the Debtor received the following distributions from the Plan:

| | |
|---|---|
| 1991 | $59,001.00 |
| 1992 | $59,342.00 |

These sums were received by the Debtor in addition to the funds he obtained from the Plan; that in April 1991 the Debtor twice received funds from the Plan which totalled $31,000. These transactions were not documented until eight months after the Debtor received these funds. It is also agreed that in November, 1992, the Plan paid the Debtor's legal expenses, which payment was attempted to be justified 10 months later as a "distribution."

## DISTRIBUTION TO CAROL HARRIS

It is stipulated that Ms. Harris terminated her employment with the P.A. in 1989, at which time her interest in the Plan was 100% vested with an account balance of $68,368. It is further stipulated that at the time she made her election to receive distribution, she had already received four distributions totalling $68,377.25; that out of this total the sum of $22,839.75 was used to make a down payment on the purchase of a condominium unit in which the Plan had an interest. This down payment was "deemed" to have been charged against the interests in the Plan even though at that time she had yet to make her election to receive distribution. She also received an additional distribution of $5,594.44 when the Plan-owned life insurance policy on her life was cashed in. Lastly, on December 13, 1988, the Plan was amended to prohibit lump-sum distributions to Plan participants, which amendment became effective January 1, 1989, at the time Ms. Harris received her distribution.

## LEGAL ANALYSIS

These are the stipulated facts upon which both the Debtor and the Objectors contend that the Debtor's right to immunize his interest in the Plan could be resolved as a matter of law, of course in their respective favors.

It should be noted at the outset that although the issues are presented in the form of Objections to the exemption claim of the Debtor, the real and the threshold issue is whether or not the Debtor's interest in the Plan is property of the estate subject to administration by the Trustee. The question of whether this property is exempt is a secondary issue and only comes into play if it is determined that the Debtor's interest is property of the estate. This is so because it cannot be gainsaid that only property which is property of the estate can be claimed as exempt. This is clear from the express lan-

guage of the Code which provides in § 522(b) that "*an individual debtor may exempt from property of the estate* (emphasis supplied) ... the exemption provided for by the Code." *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991); *In re Sirois,* 144 B.R. 12, 14 (Bankr.D.Mass.1992). So, it is clear that the analysis must begin with a determination of whether the Debtor's interest in the Plan is property of the estate.

■  Section 541 of the Bankruptcy Code governs the classification of property of the estate. Notwithstanding the broad definition of the term "property of the estate" in § 541, subparagraph (c)(2) specifically excludes from the estate, a beneficial interest in a trust which the debtor is restricted from transferring under applicable non-bankruptcy law. Therefore, if the debtor's interest satisfies this exception, the interest in the Plan is excluded from the estate.

Shortly after the enactment of the Code, courts had difficulty in interpreting the term "applicable non-bankruptcy law." Several courts concluded that the anti-alienation provisions in ERISA-qualified Profit Sharing plans constituted a restriction on transfers enforceable under "applicable non-bankruptcy law." Accordingly, a beneficial interest in an ERISA-qualified Plan was held by these courts to be not property of the estate and, thus, not subject to administration by the trustee. *In re Harline,* 950 F.2d 669 (10th Cir.1991); *cert. denied,* 505 U.S. 1204, 112 S.Ct. 2991, 120 L.Ed.2d 869; *Velis v. Kardanis,* 949 F.2d 78 (3d Cir.1991); *Shumate v. Patterson,* 943 F.2d 362 (4th Cir.1991); *In re Lucas,* 924 F.2d 597 (6th Cir.) *cert. denied,* 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *In re Moore,* 907 F.2d 1476 (4th Cir.1990).

Other courts have arrived at a contrary conclusion, *In re Dyke,* 943 F.2d 1435 (5th Cir.1991); *In re Daniel,* 771 F.2d 1352 (9th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985); *In re Graham,* 726 F.2d 1268 (8th Cir.1984); *In re Goff,* 706 F.2d 574 (5th Cir.1983).

Because of this conflict between the Circuits, the Supreme Court granted certiorari in *Shumate v. Patterson, supra,* and handed down its decision on June 15, 1992, *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) and held that (1) "applicable non-bankruptcy law," for purposes of § 541(c)(2), was not limited to state law and included ERISA and other federal law; (2) the anti-alienation provision required for ERISA-qualification of Profit Sharing plan constituted an enforceable transfer restriction for purposes of such Bankruptcy Code provision; and (3) this interpretation of § 541(c)(2) was consistent with public policy underlying ERISA.

In this connection it is important to point out what the Supreme Court decided and what it did not. In *Patterson,* the only issue before the Court was whether or not the term "applicable non-bankruptcy law," as used in § 541(c)(2), was limited to the conventional common law spendthrift trust or also included all plans set up pursuant to Federal legislation requiring anti-alienation provisions, or other restrictions on transfer of the interest of the beneficiary, i.e., ERISA-qualified Plans, which was the Plan involved in *Patterson.* However, the Supreme Court was not presented with the questions before this Court, and the Court did not deal with them. These are: whether a Plan which facially is an ERISA-qualified Plan, but which is not operated in conformity with the operational requirements of the tax exemption provision of the Internal Revenue Code, 26 U.S.C. § 401, would come within the term "applicable non-bankruptcy law;" and whether the fact that the Plan obtained a tax exempt status from the IRS is a conclusive determination of ERISA qualification and therefore, the Bankruptcy Court must defer to the IRS determination that the Plan is ERISA-qualified when considering whether the Debtor's interest in the Plan is exempt.

■  The Fifth Circuit in *In the Matter of William Youngblood,* 29 F.3d 225 (5th Cir. 1994) considered whether the bankruptcy court was precluded from making a determination of the qualified status of the plan where the IRS had already made a determination that the plan was qualified. Based upon the recognition that the IRS is entrust-

ed with the task of implementing the Internal Revenue Code and has a wealth of experience in the application of these laws, as well as the fact that the state legislature intended for state courts to defer to the IRS, the 5th Circuit concluded that the bankruptcy court must defer to the IRS on the issue of determining ERISA-qualification.

*Youngblood* raises the question of what precedential value it has on this Court. Under the established federal legal system, the decisions of one Circuit are not binding on other Circuits. Circuits are not in agreement as to what extent their own decisions are binding on themselves, i.e., whether a decision of one panel is binding on another panel considering the same issue. In 1981 Congress divided the then-existing Fifth Circuit, which included Alabama, Georgia and Florida, and created the Eleventh Circuit, comprised of these three states. The Act dividing the old Fifth and creating the new Eleventh did not address the issue of whether the previous decisions of the old Fifth Circuit remained binding authority upon the new Eleventh Circuit. The Eleventh Circuit first faced the issue in the case of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), in which it held that the decisions of the old Fifth Circuit would be binding as precedent on the Eleventh Circuit District Courts and Bankruptcy Courts. The holding in *Bonner* was further refined in *Stein v. Reynolds Securities*, 667 F.2d 33 (11th Cir. 1982), in which the Eleventh Circuit held that the decisions of the former Fifth Circuit by Unit A of that Court, which included the State of Texas, are not binding precedent in the Eleventh Circuit. Based on the foregoing this Court is satisfied that *Youngblood*, decided by the new Fifth Circuit in a case arising from the District Court in Texas (Unit A) has no binding precedential value upon this Court. Thus, this Court is not bound to accept the IRS qualification of a plan under ERISA, and is free to consider whether or not the Plan under consideration is an ERISA-qualified Plan, based upon the manner in which it was operated pursuant to 29 U.S.C. § 1056(d)(1).

## IS THE PLAN UNDER CONSIDERATION "ERISA QUALIFIED"?

The Supreme Court in *Patterson* used the term "ERISA-qualified Plan". In *Patterson*, it was conceded that the Plan under consideration was ERISA-qualified. The Supreme Court did not specify what elements must be established to determine whether or not a Plan is an ERISA-qualified Plan. The term "ERISA-qualified" is not a term of art and is not defined by the Bankruptcy Code, by the Internal Revenue Code, or by ERISA itself. One must, therefore, determine, based upon the Statutory scheme of ERISA and the Internal Revenue Code what type of Profit Sharing plans are ERISA-qualified. Post-*Patterson* cases disagree as to the definition of "ERISA-qualified," and what is required to qualify a Plan under ERISA. One approach concludes that a plan is ERISA-qualified for purposes of § 541(c)(2) if it is (1) governed by ERISA and (2) includes an anti-alienation provision that is (3) enforceable under ERISA. *In re Bennett*, 185 B.R. 4 (Bkrtcy.E.D.N.Y.1995). Other courts have enunciated a different approach, holding that a plan must (1) be tax qualified under Internal Revenue Code § 401(a), (2) be subject to ERISA, and (3) include an anti-alienation provision.

■ This Court is inclined to accept the approach which emphasizes the specific elements of qualification under ERISA. A determination of whether a plan is "ERISA-qualified" is necessary before concluding it is excluded from property of the estate. *In re Sirois, supra; In re Greif*, 144 B.R. 206 (Bankr.D.Mass.1992). This is so because, it cannot be gainsaid that even if the plan is facially ERISA-qualified, it must be operated in full requirement of ERISA and also the Internal Revenue Code. While the Bankruptcy Court is not competent to determine whether or not the ERISA-qualification should be revoked or terminated for noncompliance for purposes of the Internal Revenue Code, it is certainly competent to determine whether or not the Plan under consideration is within the holding of *Patterson* and excluded from the Debtor's estate by virtue of § 541(c)(2). It is beyond peradventure that Profit Sharing plans must be adminis-

tered for the exclusive benefit of plan participants and not for the benefit of owners of the plan or sponsors who are using the plan as a personal bank. It would be incongruous indeed to grant this protective status to a Profit Sharing plan which is administered as a handy cash cow for the owner and the settlor of the plan.

A rudimentary requirement of an ERISA-qualified plan is that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan." 29 U.S.C. § 1103(c)(1) (ERISA § 403(c)(1)). "A 'participant' is any employee ... who is or may become eligible to receive a benefit from an employee benefit plan ..." 29 U.S.C. § 1002(7) (ERISA § 3(7)). Section 1135 of 29 U.S.C. (ERISA § 505) authorizes the Secretary of Labor to promulgate regulations necessary to implement the provisions of ERISA. Pursuant to this authority, the Secretary of Labor clarified the term "employee benefit plan" by providing in 29 C.F.R. § 2510.3–3 that an employee benefit plan shall not include any plan under which no employees are participants covered under the plan. The regulation further provides that for the purposes of this section, an individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or the individual and his or her spouse. *In re Hall,* 151 B.R. 412 (Bankr.W.D.Mich.1993).

In the case of *In re Witwer,* 148 B.R. 930 (Bankr.C.D.Cal.1992) which is a post-*Patterson* case, the Court analyzed the term "ERISA-qualified plan." The plan in *Witwer* was set up by the debtor who was the sole participant and beneficiary of a Profit Sharing plan which was established by his incorporated medical practice. The plan contained the requisite anti-alienation provision and, facially, complied with the anti-alienation requirements of § 401(a) of the Internal Revenue Code. The court, relying on 29 C.F.R. § 2510.3–3, held that the Profit Sharing plan was not subject to ERISA because the debtor was not a participant for the simple reason that the regulation clearly disqualified a sole shareholder as an employee. By disqualifying the debtor as an employee, the plan then had no participants, and therefore, the plan did not meet the definition of an employee Profit Sharing benefit plan. 29 U.S.C. § 1002(2)(A) (ERISA § 3(2)(A)).

In a non-bankruptcy context, two Circuits have determined that a plan whose sole beneficiaries were the owners of the company could not qualify as a plan under ERISA. *Fugarino v. Hartford Life & Accident Ins. Co.,* 969 F.2d 178 (6th Cir.1992); *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262 (9th Cir. 1991). The very same issue was considered by the Chief District Judge of this District in the case of *In re Pruner,* 140 B.R. 1 (M.D.Fla.1992). Judge Moore held that the debtor's plan, in which the debtor was, and always had been, the only participant, was not subject to the provisions and regulations of ERISA. Judge Moore cited the case of *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982), a case which concededly was a pre-*Patterson* case, but the language is still relevant. In *Donovan,* the Eleventh Circuit held *en banc* that, based on the ERISA definitions of "employer" and "employee organization," only if the plan covers ERISA participants based on the employee's status in a relationship of employment may the plan qualify as an ERISA-qualified plan.

In the present instance, the Debtor is the sole shareholder of the professional association. At some time during the administration of the Plan, the Plan had other participants other than the Debtor. However, the Debtor and his wife made frequent loans to themselves. They invested in properties not for the exclusive benefit of any participant, and none of the investments had even a faint resemblance to a prudent investment. There were investments in non-liquid properties made without the benefit of any meaningful investigation or independent appraisals of the properties, and the interests purchased were not freely transferrable. Lastly, the Debtor generally failed to manage the Plan assets as an independent fiduciary charged with the management of other people's money. It is the general failure to administer this Plan in compliance with ERISA and the Internal Revenue Code, and the use of the Plan as a

personal bank which justifies the treatment of this Plan as property of the estate.

■ Having concluded that the Debtor's interest in this Profit Sharing Plan is not excluded from his estate by virtue of § 541(c)(2) based on *Patterson*, this leaves for consideration whether or not the Debtor may exempt his interest in this Profit Sharing Plan pursuant to Fla.Stat. § 222.21(2), which provides, in pertinent part:

> § 222.21. EXEMPTION OF PENSION MONEY AND RETIREMENT OR PROFIT–SHARING BENEFITS FROM LEGAL PROCESS
>
> (2)(a) Except as provided in paragraph (b), any money, or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement or profit sharing plan that is qualified under § 401(a), § 403(a). § 403(b), § 408, or § 409 of the Internal Revenue Code of 1986, as amended, is exempt from all claim of creditors of the beneficiary or participant.

■ It is apparent that the exemption under this Statute is limited to monies or assets payable to the participant of retirement plans or profit sharing plans which are qualified under ERISA and the applicability provision of the Internal Revenue Code having concurred that the plan under consideration (Capital) that the plan is not excluded from the estate of the Debtor by virtue of § 541(c)(2), thus could be claimed as exempt provided, however, that it qualifies for exemption under the Florida Statute under consideration. Since it does not, the Debtor cannot rely on this Statute to exempt his interest in the Plan under consideration. As an alternative the Trustee and Banker's Trust contend that even if the plan is ERISA qualified Fla.Stat. § 222.21(2)(a) is invalid because it has been preempted by ERISA.

It should be noted at the outset that the Objectors devoted a great amount in their briefs to urge that the Plan under consideration is not ERISA-qualified Plan, and thus not excluded from the Debtor's estate by virtue of § 541(c)(2) and subject to administration unless the Debtor may exempt the interest. Since ERISA-qualification is a condition precedent to the application of the Statute relied on by the Debtor, the exemption under this Statute is not available, having already concluded that the Plan is not an ERISA-qualified Plan.

In light of the foregoing it is unnecessary to consider whether the Statute is pre-empted by ERISA, a proposition challenged by the Trustee, in spite of the controlling law in this Circuit, which holds that the Florida exemption statute for "employee benefit plans" was not pre-empted by ERISA, and thus was available to Chapter 7 debtors. See, *In re Schlein*, 8 F.3d 745 (11th Cir. 1993).

■ This leaves for consideration the claim of exemption based on Fla.Stat. § 222.201. Section 522(b)(1) of the Bankruptcy Code authorizes States to opt-out of the federal exemptions set forth in Section 522(d) of the Bankruptcy Code. Florida, with a majority of the States, opted-out of § 522, by enacting Fla.Stat. § 222.20 prohibiting the citizens of this Florida from claiming as exempt any property listed in Section 522(d) of the Bankruptcy Code.

Notwithstanding, the Legislature enacted Fla.Stat. § 222.201 and in fact selectively opted-back to the federal exemptions authorizing the citizens of the State to exempt properties which may be exempted under Section 522(d)(10) which in pertinent part provides:

> (d) The following property may be exempted under Subsection (b)(1) of this section:
>
> .    .    .    .    .
>
> (10) The debtor's right to receive—
>
> .    .    .    .    .
>
> (E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan ... to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
>
> .    .    .    .    .
>
> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at

the time the debtor's rights under such plan or contract arose;

. . . . .

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1986.

Whether States which opted-out from the federal exemptions may selectively opt-back, like Florida did with the enactment of Fla. Stat. § 222.201 is not without doubt. *In re Morrow,* 122 B.R. 151 (M.D.Fla.1990); see also *Matter of Lee,* 119 B.R. 833 (Bankr. M.D.Fla.). This Court has no difficulty in accepting the proposition that there is no constitutional obstacle for Florida to opt-back selectively into the federal bankruptcy exemptions, nor in the Bankruptcy Code. The legislative history of the Code does not indicate an intention by Congress to establish an "all or nothing" policy by providing for the opt-out and indirectly prohibiting the opting-back. However, it is unnecessary to rule on this question.

A review of the legal requirements of § 522(d)(10)(E) reveals that, regardless of Fla.Stat. § 222.201, the Profit Sharing Plan does not qualify as exempt property for two reasons. First, because the Plan was established by and under the auspices of an insider that employed the Debtor, i.e., Howard M. Harris M.D.P.A.; see § 522(d)(10)(E)(i). Second, the Plan does not qualify under the applicable provisions of the Internal Revenue Code pursuant to § 522(d)(10)(E)(iii). Based upon the foregoing, it is clear that the Debtor's interest in this Profit Sharing Plan cannot be claimed and allowed as exempt property. In light of the foregoing, it is unnecessary to consider whether or not Fla.Stat. 222.20 is or is not constitutional.

Based on the forgoing, this Court is satisfied that there are no genuine issues of material fact and the Trustee and Banker's Trust are entitled to a final judgment in their favor.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Trustee is hereby granted, and a separate final judgment will be entered in accordance with the foregoing. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Debtor is hereby denied.

DONE AND ORDERED.