**In re Xavier J. FERNANDEZ, Debtor.**

**Bankruptcy No. 98–14644–9P7.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

June 30, 1999.

Guillermo Ruiz, St. Petersburg, FL, for debtor.

Diane L. Jensen, Fort Myers, FL, trustee.

Alan P. Woodruff, Cape Coral, FL, Special Counsel to trustee.

Sara Kistler, Timberlake Annex, Tampa, FL, U.S. Trustee.

### ORDER ON TRUSTEE'S OBJECTION TO EXEMPTIONS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a challenge by Diane J. Jensen (Trustee) to the exemptions claimed by Xavier J. Fernandez (Debtor). Specifically, the Trustee challenges the Debtor's right to exempt his interest in the Xavier J. Fernandez P.A. Defined Benefit Plan (Defined Benefit Plan), the Xavier J. Fernandez P.A. Profit Sharing Plan (Profit Sharing Plan) and the Xavier J. Fernandez P.A. Money Purchase Plan (Money Purchase Plan). It is the Trustee's contention that none of the Debtor's retirement plans are subject to the Employee Retirement Income Security

Act (ERISA), that the Debtor's retirement plans are not "qualified" and, therefore, they are not exempt by virtue of Fla.Stat. § 222.21(2). Thus, the Trustee contends that the assets in these Plans are subject to administration by the Trustee. At the final evidentiary hearing, the following relevant facts were established:

## DEFINED BENEFIT PLAN

The Debtor is an attorney practicing through his professional corporation, Xavier J. Fernandez, P.A. (the "P.A."). In 1980, the P.A. adopted a Defined Pension Benefit Plan (the Plan). The Plan was in fact an adoption of the Datair Mass–Submitted Prototype Standardized Defined Benefit Pension Plan and Trust (Datair Prototype). (Tr's Exh. 7). The Plan was amended in 1985 and on June 1, 1995.

In this case the Profit Sharing Plan was established effective January 1, 1993, with the adoption of the Datair Mass–Submitter Prototype Defined Contribution Plan and Trust by Xavier J. Fernandez, P.A. The IRS issued a favorable Opinion Letter with respect to the Datair Mass–Submitter Prototype Defined Contribution Plan and Trust in May of 1992. The Profit Sharing Plan also received an individual favorable determination letter from the IRS in June of 1994. *See* Hearing Transcript at page 69. Pursuant to IRS rulings, standardized prototype plans need not be submitted for individual favorable determination letters but are entitled to rely on the IRS Opinion Letter issued to the prototype sponsor since standardized prototype plans only provide each adopting plan sponsor with limited options to vary the plan provisions (hence the term "standardized"). *See* IRS Rev.Proc. 89–13, as modified by Rev.Proc. 90–20, Rev.Proc. 90–21 and Rev.Proc. 92–41.

The Plan agent was the P.A., the Plan administrator was the P.A. and the Plan Trustee was the Debtor, individually. The Plan was readopted in 1993 but there was no change in the make up of the Plan. The P.A. remained the employer, the Plan

Agent and Administrator, and the Debtor remained the Plan Trustee. (Tr's Exh. 8). By letters dated July 22, 1981, June 14, 1994, and March 17, 1995, the Internal Revenue Service informed the P.A. that it determined the Plan to be a qualified ERISA plan.

Sometime in early 1980, the P.A. acquired a fractional interest in a residential lot in Moorhaven, Florida with two other attorneys who received their respective fractional interests for legal services rendered by them. Thereafter, the P.A. acquired the fractional interests of the other attorneys and conveyed its full ownership interest of the lot to the Plan. In addition, in 1985, the P.A. conveyed to the Plan a lot in Cape Coral, Florida valued at $30,000 and a second lot also in Cape Coral valued at $1,500.

In 1992, the Debtor entered into an agreement with his ex-wife for the Plan to acquire a portion of raw land owned by her in Sanibel Island, Florida. Between the date of the agreement in 1992 and 1996, the Plan paid to the Debtor's ex-wife $800.00 per month. Because of some difficulty in closing the transaction, the actual conveyance to the Plan did not take place until 1996. The agreement was not formalized and reduced to writing because the Debtor felt that he could trust his ex-wife to abide by the agreement's terms. However, it is without dispute that it was ultimately conveyed formally to the Plan.

Although the record is unclear whether the real estate acquisition in 1993, a lot in Schuylerville, New York, was conveyed by him individually or by the P.A., it appears that this lot was purchased with Plan assets and the lot is owned by the Plan and not by the P.A. or by the Debtor, individually. What is clear is that the lot was acquired for the purpose of constructing a retirement residence for the Debtor.

It further appears that in 1995, the Debtor borrowed $50,000 from the Plan for the purchase of his primary residence in Redington Beach, Florida. The loan

was amortized over thirty years with an annual interest rate of 6 percent. The Debtor made no loan payments to the Plan. When the Debtor sold his Redington Beach home, he received two checks, one in the amount of $49,438.31, representing the principal balance on his loan and the second check in the amount of $6,423, representing accrued payments and interest owed by the Debtor to the Plan. The Debtor endorsed the $49,438.31 check to the Bank which had financed the purchase of his current residence in Ft. Myers, which is owned with his wife as tenants by the entireties and paid the accrued interest on the loan borrowed from the fund in the amount of $6,423.82. The Ft. Myers residence was originally purchased by the wife in December, 1997, and when the Debtor made the payment to the fund on the accrued interest, the wife conveyed an interest to the Debtor in the property which was then owned by them as tenants by the entireties. Although it is not clear from this record, this residence is apparently a security for the loan the Debtor obtained from the Plan which is still outstanding and unpaid.

Subsequent to the filing of his Voluntary Petition, the Debtor withdrew $2,700 from the Defined Benefit Plan without authority from this Court. The total value of the assets of the Plan as of 1996 was $286,000 and the total liabilities were $286,697.

## PROFIT SHARING PLAN

The next claim of exemption involves the Debtor's Profit Sharing Plan established by the P.A. in 1993. (Trustee's Exh. 9). It was an adoption again of the Datair Mass–Submitted Prototype Standardized Defined Benefit Pension Plan and Trust. The Profit Sharing Plan also received an individual Favorable Determination Letter from the IRS June 1994. It appears that the total contributions to the Profit Sharing Plan was $5,500 in 1993, $7,500 in 1994, and an assignment by the P.A. of its interest in common stock in Clinicorp which the P.A. received in lieu of payment of a fee in 1994. Although it is contended by the Debtor that there were participants in the Profit Sharing Plan, just like in the Defined Benefit Plan, there is no evidence in this record that at least since 1994, there were any participants in the Profit Sharing Plan other than the Debtor.

## MONEY PURCHASE PLAN

The Money Purchase Plan was established on January 1, 1994, pursuant to the Prototype. (Trustee's Exh. 11). Although the Money Purchase Plan required an annual contribution of 10 percent of the Debtor's compensation, it appears that the amount of the contribution is discretionary. The only contributions made to the Money Purchase Plan were in 1994 and 1995 and no contributions were made thereafter. The Money Purchase Plan did not receive a Favorable Opinion Letter from the IRS but the Debtor relies on the Favorable Opinion Letter issued by the IRS concerning the Prototype in 1992.

Basically, these are the relevant facts established at the final evidentiary hearing.

It is the Trustee's contention that none of the Debtor's plans are subject to ERISA and, therefore, cannot be claimed as exempt under this statute. In addition, the Trustee contends that the Plans do not qualify because they are not conducted in conformity with the requirements of ERISA.

In opposition to the relief sought by the Trustee, the Debtor contends that (1) the Trustee has no standing to seek a determination of the qualification of the Plans; (2) the Plans are "exempt from the claims of creditors in a bankruptcy proceeding" (sic); (3) the Plans are ERISA qualified and, therefore, the funds in the Plans are exempt by virtue of Fla.Stat. § 222.21.

Although the matter before this Court is presented by an Objection to a Claim of Exemption by the Debtor and the exemption is claimed under Fla.Stat. § 222.21, it is imperative to consider first whether the

property claimed as exempt is or is not property of the estate. This is so because the Debtor can only claim properties as exempt which are properties of the Debtor's estate under Section 522(b). Ordinarily, this is a non-issue except when the property claimed as exempt is the Debtor's interest in a defined pension benefit plan or any profit sharing plan under Sections 401(a), 403(b), 408 or 409 of the Internal Revenue Code.

Prior to 1992 the courts generally held that Section 541(c)(2) Bankruptcy Code, which excludes properties from the estate if the restriction on the transfer of the beneficial interest of the debtor was enforceable under applicable non-bankruptcy law and applied only to the traditional common law spendthrift trusts. Thus, most courts held that properties in a ERISA qualified plan, especially in the typical self-settled trusts set up by professionals, doctors and lawyers, were not excluded from the estate and were subject to administration. *See e.g. Matter of Goff*, 706 F.2d 574 (5th Cir.1983); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Graham*, 726 F.2d 1268 (8th Cir.1984); *In re Dyke*, 943 F.2d 1435 (5th Cir.1991); *In re Daniel*, 771 F.2d 1352 (9th Cir.1985) cert. denied 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313, (1986).

Because of conflict between Circuits in the interpretation of the scope and reach of Section 541(c)(2) *See In re Harline*, 950 F.2d 669 (10th Cir.1991), cert. denied 505 U.S. 1204, 112 S.Ct. 2991, 120 L.Ed.2d 869 (1992); *Velis v. Kardanis*, 949 F.2d 78 (3rd Cir.1991), the Supreme Court granted certiorari and in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), held that (1) the term "applicable non-bankruptcy law" in Section 541(c)(2) was not limited to state law but also included ERISA and other federal law and; (2) the anti-alienation provision required for ERISA qualification for a profit sharing plan was an enforceable restriction on transfer for the purpose of Section 541(c)(2).

■ Obviously, *Patterson* settled the issue with finality. While it is clear what the Supreme Court decided in *Patterson*, it is equally clear what it did not decide. The Supreme Court in *Patterson* did not consider whether a defined pension or a profit sharing plan which facially were ERISA qualified would still be not within the exclusion of Section 541(c)(2) if the plan was not operated consistent with the requirements of ERISA. This is the very issue which is before this Court. Thus, notwithstanding that the particular plan was recognized by the IRS as ERISA qualified, the manner the plans were operated is still subject to scrutiny and if found that it was not operated in compliance with the requirements of ERISA the properties in the plan are not excluded from the estate. In that case the question then leads to the ultimate question which is whether the Debtor may exempt the properties in the plan under the applicable local law, in this instance Fla.Stat. § 222.21.

The claim of exemption under consideration is based on Fla.Stat. § 222.21 which provides:

> Any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in a retirement plan or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 403(b), s. 408 or s. 409 of the Internal Revenue Code, as amended, is exempt from the claims of creditors of the participant or beneficiary.

■ Fla.Stat. § 222.21 does not specifically mention ERISA as a condition precedent for the exemption, it is now uniformly agreed that the reference to the statute in the exemption requires that the plan in question be ERISA qualified before the Debtor can invoke the exemption granted by Fla.Stat. § 222.21. *See In re Humbert*, 1993 WL 343116 (D.Kan. Aug. 4, 1993) (not reported in F.Supp.). As stated by the Eleventh Circuit Court of Appeals in *In re Schlein*, 8 F.3d 745 (11th Cir.1993),

The statutory language of § Fla.Stat. § 222.21 does not expressly mention ERISA. However, the statute does refer to 'retirement or profit-sharing plan[s] that [are] qualified under s. 401(a), s. 403(a), s. 403(b), s. 408, or s. 409 of the Internal Revenue Code of 1986 ...' In linking the protected plans to those sections of the Internal Revenue Code which designate ERISA-qualified plans, Florida has enacted a law that 'relate[s] to' ERISA benefit plans. *Schlein,* 8 F.3d at 750.

■ In the matter under consideration, contrary to the position taken by the Trustee, the Debtor's Defined Benefit Pension Plan is facially ERISA qualified and the record is unrebutted that the Plan's tax exempt status, pursuant to its ERISA qualification, was recognized and never revoked by the IRS. It is not for this Court to determine the tax exempt status of this Plan. *In re Youngblood,* 29 F.3d 225 (5th Cir.1994).

However, it is equally true that it is for this Court to decide whether the Debtor's Plans, while facially ERISA qualified, lost the immunity from administration granted by Section 541(c)(2) because of the manner the Plans were operated by the Debtor. This leads to examination of the Debtor's transactions with the Plan properties and whether the Plans lived up to the requirements of ERISA.

### DEFINED BENEFIT PLAN

■ The Trustee contends that the Plan does not qualify because (a) it was not properly amended; (b) it was improperly funded by prohibited transactions, specifically by the conveyance of real estate; (c) the Debtor engaged in improper lending transactions; (d) the Debtor improperly distributed Plan assets; and (e) the Debtor used Plan assets to make improper investments.

The contention that the Plans were not properly amended is not supported by the evidence. It appears that the Prototype for the Plan was amended twice. Nothing furnished to this Court indicates that amending a prototype plan would suffice to amend all plans established pursuant to the prototype. The Trustee contends that the Plan was only amended, if amended, effective March 1, 1995. (Trustee's Exh. 6). Thus, between March 1, 1994 and March 1, 1995, the Plan was not in compliance with the requirements of the Internal Revenue Code. The evidence presented on the point lacks sufficient persuasiveness which would permit the conclusion that this if this contention is true, the possible gap would operate as a forfeiture of the qualification of the Plan under the Internal Revenue Code.

The Trustee contends that the Plan was improperly funded. The Trustee intimates that it is improper to fund a plan by conveying real property to the plan because, according to the Trustee, this is a sale or exchange which violates the prohibited transaction provision of the Internal Revenue Code, § 4975 and ERISA § 406. The IRS and courts have recognized that prohibited transactions may constitute disqualification. The Trustee concedes that prohibited transactions no longer compel an automatic disqualification of a retirement plan. There is nothing in this record to establish that the IRS took any action whatsoever and disqualified the Plans because of this claimed prohibited transaction. In light of the non-action by the IRS, this Court is disinclined to accept the proposition that the transfer of real estate to the plan even if it was a prohibited transaction would operate as an automatic disqualification.

The Trustee also contends that there is something wrong with the fact that beginning in 1992, when the Debtor obtained normal retirement age, the Defined Benefit Plan assets exceeded the accrued liabilities. Thus, the Plan was overfunded by approximately $75,000. There is nothing in this record which indicates, and no law is cited, that overfunding disqualifies a Plan. The Trustee criticizes the Plan's pur-

chase of a medical office building and leased office space in the building to the clients of the P.A.

There is nothing in this record to indicate that the acquisition of the office building was an imprudent and risky investment inconsistent with the prudent investment rule required of trustees of pension plans. Neither is there any indication that the acquisition of the office building was not an arm's length transaction. The fact that the office building was ultimately sold at a loss furnishes no support for the contention that the investment had little likelihood of benefiting the Plan.

In addition, the Trustee also challenged the Debtor's purchase in 1992 of a portion of raw land located in Sanibel, Florida, from his former wife. It is without dispute that the Plan paid $800 per month to the former wife toward this purchase. However, there is nothing in this record to show that this was not an arm's length transaction and a proper investment by the Plan. Although this transaction was not formally documented, in light of the nature of the relationship between the parties, this Court does not view this either as a suspect or a prohibited transaction. There is nothing in this record which indicates that this acquisition by the Plan from the former wife was not done with the care, skill, prudence and diligence under the circumstances then prevailing of a prudent man acting in a like capacity. ERISA § 404(a)(1)(B).

The picture is quite different, however, concerning the Defined Benefit Plan's acquisition of approximately $90,000 of raw undeveloped land in Schuylerville, New York. There is no question and the Debtor admits that this was acquired for his personal use when he retires and was for his personal benefit.

In addition, it is clear that the transaction involving the Redington Beach residence, and later the Fort Myers residence was an improper transaction. Although the initial borrowing from the Defined Benefit Plan might have been within the limit, when the Redington Beach property was sold, the Debtor did not repay the loan. Instead, the Debtor used the sale proceeds to purchase his next residence in Fort Myers. It is quite doubtful that an independent plan administrator would have approved the purchase as a prudent investment. This is so, especially since the entire transaction was for the sole benefit of the Debtor.

■ A rudimentary requirement of an ERISA qualified plan is that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan." 29 U.S.C. § 1103(c)(1) (ERISA § 403(c)(1)). Whether or not in a defined benefit plan or in a profit sharing plan the sole participant is the debtor has been considered by the courts in the past. In the case of *In re Witwer,* 148 B.R. 930 (Bankr.C.D.Cal. 1992), affirmed 163 B.R. 614 (9th Cir. BAP 1994), which is a post-Patterson case, the Court analyzed the term "ERISA-qualified plan." The plan contained the requisite anti-alienation provision and, facially, complied with the anti-alienation provision and, facially, complied with the anti-alienation requirements of § 401(a) of the Internal Revenue Code. The court, relying on 29 C.F.R. § 2501.3–3, held that the Profit Sharing plan was not subject to ERISA because the debtor was not a participant for the simple reason that the regulation clearly disqualified a sole shareholder as an employee. By disqualifying the debtor as an employee, the plan then had no participants, and therefore, the plan did not meet the definition of an employee Profit Sharing benefit plan. 29 U.S.C. § 1002(2)(A) (ERISA § 3(2)(A)). This Court also considered the issue in the case of *In re Harris,* 188 B.R. 444 (Bankr. M.D.Fla.1995) where just as in the present instance the Debtor was the only shareholder in the P.A., he is the only participant in the profit sharing plan. While it is true that these cases dealt with profit

sharing there is no reasons why the principles announced in the cases cited do not equally apply to defined benefit plans. It cannot be gainsaid that an employee benefit plan does not include a plan which does not cover employees and is clearly one of the core requirements of ERISA, the plan assets must not enure to the benefit of an employer and which must be held for the exclusive purpose of providing benefits to the participants in the plan. A plan, obviously, which has no participants other than the debtor is not an employee benefit plan and obviously cannot be a profit sharing plan since there is no one to share profits with. The Statute itself defines a participant as any employee who is or may become eligible to receive a benefit from an employee benefit plan.

The Debtor relies on a recently issued advisory opinion letter dated February 4, 1999, which the Secretary of Labor held that Congress intended "working owner" such as a self employed individual to be included in the definition of a participant. It is not clear whether or not in the case before the Secretary of Labor involved a sole participant plan although it appears that it involved a multi-employer plan. Be that as it may, this Court is satisfied that this opinion letter is not persuasive and not applicable to the facts in this case and this Court is satisfied that a defined benefit plan and a profit sharing plan in which the only participant is the very individual who is the principal of the settlor of the plan who is also the sole beneficiary of the plan. This Court doesn't see any difference between the fact pattern involved in Harris and in the present instance. While the conduct of the Debtor was not as egregious as the conduct of the Debtor in Harris, nevertheless this Court is satisfied that the Debtor engaged in transactions which were solely and exclusively for his benefit; that he is the sole participant and under *Witwer, supra* and the other cases cited, especially *In re Pruner, supra* the defined benefit plan and the profit sharing plan and the money purchase plan lost their qualification to be recognized as ERISA plans for the purpose of determining the Debtor's right to exempt his interest in the Plans pursuant to Section 222.21 Fla.Stat.

In accordance with the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Objection to Exemptions is hereby sustained. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor's claims of exemption of the Profit Sharing Plan and the Defined Benefit Plan and the Money Purchase Plan are hereby disallowed and the Plans are subject to administration by the Chapter 7 Trustee. It is further

DONE AND ORDERED.