In re Virginia L. KAUFFMAN, Debtor.

No. 02–5888–3F7.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 15, 2003.

Patricia M. Moring, Crystal River, FL, for Debtor.

Richard A. Perry, Ocala, FL, for Thomas Read.

Gregory L. Atwater, Orange Park, FL, trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Motion to Strike Amendment to Schedule C filed by Thomas Eugene Read ("Read") and Objection to Debtor's Claim of Exemptions filed by Read. The Court conducted a hearing on April 16, 2003. In lieu of argument, the Court elected to take the matter under advisement and instructed the parties to file memoranda in support of their positions. Upon review of the memoranda, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor and Read married in 1963. On April 4, 2000 the Circuit Court in and for Citrus County, Florida entered a Final Judgment of Dissolution of Marriage (the "Final Judgment") dissolving the parties' marriage. (Read's Ex. 2.) The Final Judgment incorporated an agreement between the parties dated March 31, 2000 (the "Settlement Agreement"). The Settlement Agreement provided in pertinent part:

The parties recognize that [Debtor] is entitled to one-half of the pension earned by [Read] from the State of Florida, Department of Agriculture, Forestry Division. The parties also recognize that if [Debtor] receives one-half of such pension, [Read]'s income will be reduced by one-half and [Debtor]'s income from social security disability will also be reduced. Therefore, the parties agree that so long as [Read] complies with this paragraph or until [Debtor] can receive

one-half of the pension without her social security disability being effected [sic], [Debtor] will not directly take one half of [Read]'s pension.

Therefore, [Read] shall pay on behalf of [Debtor] the amount as calculated in the following paragraph directly to Regions Visa. Upon [Debtor] reaching the age of 62 years, at which time she will receive regular social security payments, she shall receive one-half of the State of Florida, Department of Agriculture, Forestry Division pension earned in the name of [Read] directly from the State of Florida. The parties shall split one-half of the cost of the transfer including preparation of whatever orders are necessary.

Should [Read] fail to make payments as set out hereunder, [Debtor] shall have the option of electing to receive one-half of the pension form the State of Florida or moving for contempt to enforce this provision.

(Read's Ex. 2.) Paragraph 11 of the Final Judgment provided that "[b]oth [Read] and [Debtor] waive and shall receive no alimony". *Id.* The Circuit Court has not entered an order requiring that the State of Florida pay half of Read's retirement benefits directly to Debtor.

Debtor filed a Chapter 7 bankruptcy petition on June 24, 2002. Debtor failed to list her interest arising from the Final Judgment as personal property on Schedule B of her bankruptcy petition or as exempt property on Schedule C of her bankruptcy petition. However, Debtor indicated on Item 4 of her Statement of Affairs that she was the petitioner in a post-dissolution action against Read in the Circuit Court for Citrus County, Florida.

During the latter part of 2002 Read contacted the Trustee and offered to purchase Debtor's interest arising from the Final Judgment. On December 20, 2002

the Trustee filed Notice of Intent to Sell Property of the Estate at Private Sale (the "Notice to Sell"). (Doc. 15.) The Notice to Sell indicated that the Trustee intended to sell to Read for $10,000.00 the bankruptcy estate's interest in Debtor's rights or interest arising out of the Final Judgment. The Notice to Sell provided that "[t]he property is being sold subject to all liens and encumbrances of record, if any. The Trustee is only sell[ing] whatever interest, if any, the bankruptcy estate has in this property. The property is being sold 'as is'. The trustee makes no representations or warranties of any kind with regard to the property. The proceeds of the sale shall become property of the estate and distributed according to the Bankruptcy Code." The Notice to Sell contained a negative notice legend giving interested parties twenty days to object to the sale. Debtor filed an objection to the Notice to Sell indicating that her rights arising from the Final Judgment were exempt pursuant to 11 U.S.C. § 522(b) and Fla. Stat. § 222.21. (Doc. 16.) On February 19, 2003 the Court conducted a hearing on Debtor's objection to the Notice to Sell. On February 24, 2003 the Court entered Order Overruling Debtor's Objection to Trustee's Notice of Intent to Sell Property of the Estate at Private Sale and Approving Sale. (Doc. 22.) Noting that Debtor had not claimed the property as exempt as of the date of the hearing, the order overruled the objection and approved the sale.

On February 26, 2003 Debtor filed Amendments to Schedule B and C of her bankruptcy petition, listing and claiming as exempt her "1/2 interest in State of Florida Retirement Pension earned by former husband and awarded to Debtor in a dissolution of marriage action". (Docs. 23, 24.) The bases of Debtor's claim of exemption were Article X, Section 4 of the Florida Constitution, Fla. Stat. § 222 and Fla.

Stat. § 122.15. On March 20, 2003 Read filed Motion to Strike Amendment to Schedule C and Objection to Exemptions. (Docs. 25, 26.) On April 16, 2003 Debtor filed Second Amendment to Schedule C, adding Fla. Stat. § 121.131 as a basis for the exemption. (Doc. 30.) On that same day the Court conducted a hearing on the Motion to Strike Amendment to Schedule C and Objection to Exemptions. On May 15, 2003 Read filed Motion to Strike Second Amendment to Schedule C and Amended Objection to Exemptions. (Docs. 35, 36.)[1]

## CONCLUSIONS OF LAW

**I. Does the Court have discretion to disallow Debtor's Amendment to Schedule C?**

■ The threshold issue before the Court is whether it has discretion to disallow Debtor's Second Amendment to Schedule C. Bankruptcy Rule 1009 provides that a debtor may amend her bankruptcy schedules as a matter of course at any time before the case is closed. Absent a showing of bad faith on the part of the debtor or prejudice to creditors, a court does not have discretion to deny a debtor's amendment to exemptions. *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir.1982). Bad faith or prejudice to creditors must be shown by clear and convincing evidence. *In re Talmo*, 185 B.R. 637,

645 (Bankr.S.D.Fla.1995) (citation omitted).

■ A debtor's deliberate and intentional delay in amending an exemption in order to gain an economic or tactical advance at the expense of creditors and interests of the estate constitutes bad faith sufficient to disallow the amendment. *Talmo*, 185 B.R. at 648. Debtor testified that she did not intend to defraud her creditors by failing to list the asset on Schedules B and C of her bankruptcy petition. Patricia Moring, Debtor's attorney, testified that she, not Debtor, mistakenly failed to list the asset on Debtor's schedules. The Court finds Moring's failure to list the asset on Debtor's bankruptcy schedules to be the result of Moring's inadvertence and oversight. The Court finds no evidence of bad faith on the part of Debtor.

■ Delay in filing an amendment, standing alone, does not prejudice creditors. *Doan* at 833. Additionally, the fact that the allowance of an amendment would result in the allowance of the exemption does not constitute prejudice to creditors. *Id.* The Court finds that Read failed to show that he would be prejudiced by the allowance of the amendment.[2] The Notice to Sell clearly and unequivocally indicated that Read was only purchasing whatever interest the bankruptcy estate had in the property. The basis of Debtor's Objection to the Notice to Sell was that the property which the Trustee sought to sell to Read

---

**1.** Because the parties' memoranda addressed Debtor's Second Amendment to Schedule C, Read's Motion to Strike Second Amendment to Schedule C, and Read's Amended Objection to Exemptions, the Court's Findings of Fact and Conclusions of Law and Orders will also address the subsequent pleadings.

**2.** 11 U.S.C. 101(10) defines creditor as an:
(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or
(C) entity that has a community claim;
The Court is not convinced that Read is a creditor of Debtor. However, because the Court finds that the amendment does not prejudice Read, the Court need not make a specific determination as to whether Read is a creditor of Debtor.

was exempt. The Court finds that any prejudice to Read is the result of his calculated decision to purchase the asset from the Trustee in the face of probable litigation as to its exempt nature rather than the result of the allowance of the amendment. Because there is no showing of bad faith on the part of Debtor or prejudice to creditors, the Court does not have discretion to disallow the amendment. The Court will enter an order denying Read's Motion to Strike Debtor's Second Amendment to Schedule C.

## II. Does Read have Standing to Object to Debtor's Amended Claim of Exemptions?

■ Having determined that it does not have discretion to disallow Debtor's Amendment to Exemptions and must therefore deny Read's Motion to Strike Debtor's Second Amendment to Schedule C, the Court must determine whether Read has standing to object to Debtor's claim of exemptions. Bankruptcy Rule 4003 provides that a party in interest may object to a debtor's claim of exemptions. Neither the Bankruptcy Code nor the Bankruptcy Rules define party in interest. The Court finds that Read is a party in interest by virtue of having purchased Debtor's rights arising out of the Final Judgment and thus has standing to object to Debtor's Amended Claim of Exemptions.

## III. Are Debtor's Rights Arising out of the Final Judgment Exempt?

The final issue before the Court is whether Debtor's rights arising out of the Final Judgment are exempt pursuant to Article 10, Section 4 of the Florida Constitution, Fla. Stat. § 222.21(2), Fla. Stat. § 122.15 or Fla. Stat. § 121.131. The Flori-

da Constitution does not have an exemption for retirement benefits. Additionally, Fla. Stat. § 222.21 is limited to ERISA qualified plans.[3] *In re Fernandez,* 236 B.R. 483, 487–488 (Bankr.M.D.Fla.1999); *In re Cason,* 211 B.R. 72, 73 (Bankr. N.D.Fla.1997). State retirement plans are specifically excluded from ERISA coverage. 29 U.S.C. § 1003(b)(1); 29 U.S.C. § 1002(32) (West 2003). Accordingly, § 222.21 does not apply.

■ Section 121.131 applies to employees employed by the State of Florida on or after December 1, 1970 and employees employed prior to that date who elect to participate in the Florida Retirement System. Section 122.15 applies only to employees employed prior to December 1, 1970. The Court was presented with no evidence as to when Read's employment commenced. However, Read filed a Chapter 13 petition in this Court on September 17, 2001 which was assigned Case No. 01–8553–3F3. On Schedule C of his bankruptcy petition Read claimed his retirement as exempt under § 122.15. On January 7, 2002 the Court entered Order Overruling Objection to Debtor's Claim of Exemptions. (Doc. 22.) Therein, the Court concluded that the retirement benefits were exempt under § 122.15. Accordingly, for purposes of simplicity, the Court will refer only to § 122.15. Section 122.15(1) provides:

*Benefits exempt from taxes and execution*

The pensions, annuities, or any other benefits accrued or accruing to any person under the provisions of this chapter and the accumulated contributions and the cash securities in the funds created under this chapter are hereby exempted from any state, county or municipal tax

---

**3.** ERISA is the acronym for Employee Retirement Income Security Act, legislation passed in 1974 to protect the interests of participants in employee benefit plans.

of the state and shall not be subject to execution or attachment or to any legal process whatsoever and shall be unassignable.

Read acknowledges that Debtor may have held a right to payments arising out of the Final Judgment but argues that Debtor cannot have an interest in his State of Florida retirement plan because of the anti-alienation provisions contained in § 122.15. Read argues that § 122.15's prohibition against assignment is absolute. Read contends that Debtor cannot exempt pursuant to § 122.15 whatever rights she acquired as a result of the Final Judgment.

In *Cason*, 211 B.R. at 73, the court addressed the exact issue before the Court. In that case the circuit court awarded the debtor one-half of his ex-wife's State of Florida retirement benefits which she earned during the marriage. Although the circuit court reserved jurisdiction to enter an order directing that the debtor's share of the retirement fund be paid directly to him, the circuit court had not done so as of the date of the filing of the petition. The debtor claimed his interest in the retirement fund as exempt pursuant to Fla. Stat. § 121.131. The court found that § 61.076[4] of the Florida Statutes created an exception to the prohibition against assignment set forth in § 121.31 and that the debtor was a person with accrued benefits under the Florida Retirement system by virtue of the circuit court order. The Court held that the

debtor's interest in his ex-spouse's retirement was exempt from his creditors pursuant to § 121.131.

The First District Court of Appeal has rejected the argument that an anti-alienation clause contained in a municipal pension plan was repealed by implication by the subsequent passage of § 61.076. *Board of Pension Trustees of the City General Employees Pension Plan v. Vizcaino*, 635 So.2d 1012, 1014 (Fla. 1st Dist.Ct.App.1994) (holding that a QDRO cannot be used to force direct payment to a non-participating spouse of a part of a participating spouse's municipal pension benefit as part of an equitable distribution plan).[5] The court acknowledged the case of *Alvarez v. Board of Trustees*, 580 So.2d 151 (Fla.1991). In that case the Florida Supreme Court held that Fla. Stat. § 61.1301, a provision concerning income deduction orders for alimony and child support, was irreconcilable with and resulted in the repeal of an anti-alienation clause in a municipal police and firefighter's pension plan. *Alvarez*, 580 So.2d at 153–154. However, the *Vizcaino* court pointed out that § 61.1301 was expressly limited to the collection of alimony and child support. *Vizcaino*, 635 So.2d at 1014. The court issued an implicit invitation to the legislature to fashion a solution to the problem which arises when a spouse's municipal or state retirement plan is subject to equitable distribution but cannot be transferred to the other spouse because of an anti-alienation provision in

---

**4.** Section 61.076 provides in pertinent part
*Distribution of retirement plans upon dissolution of marriage*
(1) All vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs are marital assets subject to equitable distribution.

**5.** A "qualified domestic relations order" is a domestic relations order which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a[n ERISA] plan. 29 U.S.C. 1056(d)(3)(B).

the governing statute.[6]

In a case also involving the use of a QDRO to force the direct payment from a municipal pension plan with an anti assignment clause in order to effectuate an equitable distribution plan, the Fifth District Court of Appeal reluctantly agreed with *Vizcaino*, noting that "we are not authorized in the construction of a statue to create exceptions not specifically made. The special act creating the pension and section 185.25 purport to make the benefits wholly 'unassignable', even to spouses, unless the award is for alimony or child support. We are bound by the plain language of the statute and special act." *Board of Trustees of the Orlando Police Pension Plan v. Langford*, 833 So.2d 230, 233–234 (Fla. 5th Dist.Ct.App.2002). The court noted that such anti-alienation provisions may be irreconcilable with Florida's equitable distribution laws and pointed out that a majority of courts in other states have found similar anti-assignment or alienation provisions invalid to the extent that they conflict with equitable distribution laws. *Id.* at 234. The court pointed out that the anti-alienation provisions contained in municipal pension plans are spendthrift protections designed to bar claims made by creditors but not claims made by spouses in a community property state or equitable distribution state. *Id.* at 234–35. "A spouse or former spouse should not be treated as the equivalent of

a creditor in a dissolution proceeding, but rather as the trust owner of his or her portion of pension benefits. Indeed that is how the majority of pension plans are dealt with by the courts in Florida. Why should municipal or local law pensions be treated differently?" *Id.* at 235. Although the court certified the question to the Florida Supreme Court, the Supreme Court subsequently dismissed the case. *Langford v. Board of Trustees of Orlando Police Pension Plan*, 838 So.2d 558 (Fla. 2003). Additionally, the Florida legislature has not accepted the *Vizcaino* court's invitation to address the issue.

■■■ Respectfully disagreeing with the decision in *Cason* and reluctantly following the decision in *Vizcaino*, the Court concludes that § 61.076 does not make an exception to the prohibition against assignment set forth in § 122.15.[7] Although Debtor may have acquired a right to payments as a result of the Final Judgment, she did not acquire an interest in Read's retirement plan. Debtor is therefore unable to utilize Fla. Stat. § 122.15 to exempt whatever right or interest she acquired. The Court will enter an order sustaining Read's Amended Objection to Exemptions.

## CONCLUSION

Because there is no showing of bad faith on the part of Debtor or prejudice to credi-

---

6. The Court stated:
   We express no view regarding the advisability of a legislative scheme which permits the use of income deduction orders to enforce direct payment from government pension plans of sums designated as alimony or child support, but not of sums intended to achieve an equitable distribution of the parties' marital assets. That is an issue for the legislature. It is our responsibility to interpret what the legislature has written. However, we note that, should the legislature conclude that no valid basis exists for such a distinction, the problem can easily be

corrected by amendment of section 61.1301 to include payments ordered to achieve an equitable distribution of the parties' marital assets as well as payments of alimony and child support. *Id.* at 1015.

7. When interpreting state law, a federal court is bound by the rulings of the state's highest court. *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir.1996). If the state's highest court has not ruled on the issue, a federal court must look to the intermediate state appellate courts. *Id.*

tors, the Court does not have the discretion to disallow Debtor's Second Amendment to Schedule C. Because he is a party in interest, Read has standing to object to Debtor's Amended Claim of Exemptions. The interest or right that Debtor acquired as a result of the Final Judgment is not exempt pursuant to Article 10, Section 4 of the Florida Constitution, Fla. Stat. § 222.21(2), Fla. Stat. § 122.15 or Fla. Stat. § 121.131. The Court will enter separate orders consistent with these Findings of Fact and Conclusions of Law.

### ORDER SUSTAINING AMENDED OBJECTION TO EXEMPTIONS

This case came before the Court upon Amended Objection to Exemptions filed by Thomas Read. Upon Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

1.) Thomas Read's Amended Objection to Exemptions is sustained.

2.) Debtor's right to payments arising out of the parties' Final Judgment of Dissolution of Marriage is not exempt.

### ORDER DENYING MOTION TO STRIKE SECOND AMENDMENT TO SCHEDULE C

This case came before the Court upon Motion to Strike Second Amendment to Schedule C filed by Thomas Read. Upon Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

Motion to Strike Second Amendment to Schedule C is denied.