OPINION OF THE COURT
Martin B. Stecher, J.
Petitioner seeks an order directing the corespondent New York City Police Department Pension Service Fund (hereinafter the Fund) to pay directly to her a portion of respondent former husband’s pension benefits pursuant to the terms of a New Jersey judgment of divorce.
The petitioner and respondent Chislett were divorced in March, 1979, following respondent’s resignation from the New York City Police Department in July, 1978. Since he had worked as a police officer for more than 15 years, respondent had a vested interest in a deferred retirement benefit from the Fund which became payable about May 1, 1982.
The New Jersey judgment incorporated an agreement between the parties dividing their property. Paragraph 4 of the judgment acknowledged respondent’s pension entitlement and provides in part as follows: “The parties further acknowledge and agree that Mr. Chislett is entitled to a pension from the New York City Police Force. Same will accrue to his benefit and become payable starting April 27, 1982 * * * Mrs. Chislett shall be entitled to a one-third *495 interest in the aforesaid pension as same becomes payable. The parties acknowledge that there may be various options available to Mr. Chislett for the purpose of having the aforesaid pension paid and the parties acknowledge and agree that Mr. Chislett may choose such option which may be available to him but any selection of said option will not prejudice Mrs. Chislett from receiving one third of the monies that may be available to Mr. Chislett under the options. The parties further acknowledge and agree that Mr. Chislett may not take any action which will in any way prejudice Mrs. Chislett’s one-third interest and may not borrow against, deplete or in any way hypothecate or effect the one-third vested interest that Mrs. Chislett has in the aforesaid pension. The parties further acknowledge that a copy of this Order will be filed with the New York City Police Department so that they will be put on notice of this settlement and Mrs. Chislett’s interest in the aforesaid pension.”
In the last paragraph (F) the petitioner waived her rights to alimony, partly in consideration for her share of the pension.
The Legislature of the State of New York as well as the Legislature of the State of New Jersey, have mandated that upon dissolution of marriage, property shall be equitably distributed. In Martinez v Martinez (NYLJ, Oct. 13, 1981, p 17, col 5), it was held that a pension whether privately or publicly funded is property to be distributed under the law (Domestic Relations Law, § 236, part B).
The issue presented is whether petitioner may compel the Fund to pay one third of respondent’s pension benefits directly to petitioner.
The Corporation Counsel, opposing the petition on behalf of the Fund, points out that section 7 of article V of the New York State Constitution, the “nonimpairment clause,” provides that the relationship between public retirement systems and their members is contractual, “the benefits of which shall not be diminished or impaired.” The terms of this contract may be found in the provisions of the Administrative Code of the City of New York which exempt pension benefits from legal process. Section B18-52.0 *496 of the Administrative Code provides that the right of a member to any pension benefits from the Fund, and the benefits themselves, are exempt from “execution, garnishment, attachment, or any other process whatsoever, and shall be unassignable except as in this article specifically provided.” There are similar provisions applicable to other retirement systems of this State (see Administrative Code, §§ B3-50.0, B19-7.94, B20-48.0; Retirement and Social Security Law, § 110; Ann., 93 ALR3d 711, 737).
In Caravaggio v Retirement Bd. of Teachers’ Retirement System of City of N. Y. (36 NY2d 348, 353), the Court of Appeals held that the policy behind these provisions was twofold: “The exemption and antiassignment provisions evince a legislative intent to protect the member and his family from the results of his own improvidence or misfortune, and to relieve the retirement systems from the vast amount of administrative work attendant on the processing of attachments, assignments, and the like”.
Nonetheless, judicial exceptions have been engrafted upon this statute. As long ago as 1912, the Appellate Division, Second Department, said, “We do not believe the Legislature, in creating the police pension fund and exempting it from execution and other processes, ever intended that this exemption should be construed to deprive the wife of her legal and moral right to the support of her husband. The whole purpose of the statute is served when the fund is preserved for the use of the pensioner and those legally dependent upon him for support and maintenance; when it is held intact for the care of the woman who is, in law, but apart of himself and entitled, with him, to share in the pension” (Zwingmann v Zwingmann, 150 App Div 358, 360).
A similar view was adopted in the First Department in 1918 in Monck v Monck (184 App Div 656). Similar conclusions have been drawn by other courts (see Epstein v Epstein, 10 Misc 2d 572; Fisher v Fisher, 133 NYS2d 49).
It is true that the cases recognizing this exception to the statute are presented in the context of actions to compel the payment of support obligations previously adjudicated (see, for instance, Domestic Relations Law, §§ 233, 243). *497 This case does not involve an enforcement of support for by the terms of the parties’ agreement, no support, as such, was intended. Nonetheless, the court should not blind itself to the realities of matrimonial law and practice. The New Jersey statute, which in part provided a model for our own, recognizes that equitable distribution of assets is socially more desirable than maintenance or alimony payments; that marriage as a partnership exists in fact as well as in hyperbole; and that upon equitable distribution of “partnership” assets, dependence may be reduced or even eliminated. Other considerations exist. One of them is ability of the spouse to continue to receive payments following remarriage. In the case of alimony or maintenance, payments terminate. Tax consequences are recognized by the statute and certainly must have been recognized by the parties when they negotiated this agreement. The structure of our statute is such that in distributing marital property we consider maintenance awards (Domestic Relations Law, § 236, part B, subd 5, par d, cl [5]) and in awarding maintenance we consider property which has been distributed (Domestic Relations Law, § 236, part B, subd 6, par a, cl [1]). Neither is divorced from the other.
This petitioner has elected a property distribution, payable in lifetime installments over maintenance payments. Irrespective of the form which the payments are to take the principle has not varied these 70 years: “The whole purpose of the [pension] statute is preserved when the fund is served for the use of the pensioner and those legally dependent upon him for support and maintenance; when it is held intact for the care of the woman who is, in law, but a part of himself and entitled, with him, to share in the pension.” (Zwingmann v Zwingmann, supra, p 360.)
The Legislature, it is true, did not expressly mandate the distribution of pensions; and to the extent they might not be divisible, the Legislature provided for distributive awards (Domestic Relations Law, § 236, part B, subd 5, par e). But where, as with most civil servants, the pension is the bulk of the pensioner’s estate, a distributive award in lieu of the pension is an illusion.
There is no reason why relief should be available where the payment is called alimony and unavailable when *498 called a property distribution. Nor is there any sound reason to require a default as a condition precedent to the enforcement of a right.
Finally, in the age of computerized payment, the concern of the Court of Appeals in Caravaggio (supra, p 353), that “vast amounts of administrative work” would follow such a division, is no longer a true factor.
The pension is property in which the petitioner has an interest and the Fund shall be required to respect that interest.