OPINION OF THE COURT
George D. Marlow, J.
Brenda Ritz, by her objection pursuant to Family Court Act § 439, asks this court to review a Hearing Examiner’s order granting Kenneth Ritz’s petition for a downward modification of his court-decreed, weekly maintenance obligation.
This court has examined the transcript of the extensive modification proceeding held before the Hearing Examiner, the record and papers filed by both parties, the September 28, 1988 posttrial decision of Acting Supreme Court Justice James D. Benson and its modification on appeal, and the applicable law on the issue herein raised.
*433 For the reasons set forth below, the order is reversed, and the weekly amount of maintenance mandated by Justice Benson ($250) is hereby reinstated, retroactive to the date Dr. Ritz filed his within modification petition.
The parties were married for almost two decades at the time of the trial held on those issues ancillary to their divorce. The amount of weekly maintenance petitioner was ordered to pay after a modification on appeal was $250. One of the factors specifically and expressly relied upon as a basis for the amount and duration of maintenance was the $406,162 distributive award Dr. Ritz was also ordered to pay to Mrs. Ritz in periodic amounts over the subsequent 10 years.
It is uncontroverted and unexplained that, at the time of the modification hearing, Dr. Ritz had paid his former wife absolutely none of her distributive award.
In an effort to commence a new career following her rearing of the parties’ two teenage children, respondent has enrolled herself in a course of study in Albany to become a pharmacist. She admittedly inherited about $150,000 after recently losing her mother, and now petitioner urges that her improved economic condition and outlook amount to a change of circumstances warranting a reduced weekly maintenance award. It is also relevant that the Hearing Examiner found no decrease in Dr. Ritz’s income since Justice Benson’s September 28, 1988 decision. Notwithstanding, she decreed that his weekly maintenance obligation be reduced by 20% or $50.
The issue is simple: whether Dr. Ritz, whose financial circumstances have not suffered since the divorce and whose entire mandated obligation to share the parties’ marital assets has never been met, now has the right to a decrease in his maintenance obligation because his former wife has inherited $150,000 from her recently deceased mother’s estate.
This court has been unable to find any precedent exactly on point, perhaps because no one else has ever thought to come forward to ask a court for relief under such circumstances. However, statutes and decisional law do exist to support the result reached herein.
To begin with, Acting Justice Benson expressly connected respondent’s maintenance award to the expected semiannual payments petitioner was ordered to make toward the $406,162 distributive award. That expectation and order were not only reasonable and logical, but clearly within the letter and spirit *434 of Domestic Relations Law § 236 (B) (6) (a) (1) and (11). Clauses (a) (1) and (11), in pertinent part, say:
"In determining the amount and duration of maintenance the court shall consider:
"(1) the income and property of the respective parties including marital property distributed pursuant to subdivision five of this part * * *
"(11) any other factor which the court shall expressly find to be just and proper.”
The legislative mandate is clear. Courts, in determining the amount and duration of maintenance awards, must consider the assets of each party, because people’s needs and abilities are partially dependent on how much or how little they own. Indeed, that was settled law before the equitable distribution statute was made effective in July 1980 (Berlin v Berlin, 36 AD2d 763, lv dismissed 28 NY2d 986); and it is still the law today (Matter of Spadaro v New York City Police Dept. Pension Serv., 115 Misc 2d 494, 497).
As for petitioner’s failure to pay any of the 1988 distributive award of $406,162, the court finds that delinquency to be most significant. Traditionally, courts have denied defaulting parties affirmative relief, especially if they have previously and contemptuously ignored a valid and relevant court order to the detriment of an adverse party. (Brinkley v Brinkley, 47 NY 40; Willard v Willard, 235 App Div 765; Holahan v Holahan, 234 App Div 572; Matzke v Matzke, 185 App Div 533.)
Indeed, in Brant v Brant (10 AD2d 567), the court reversed an order reducing spousal support saying, "[wjhere one who seeks the favor of the court has willfully flouted its orders, courts will be loath to exercise their discretion to grant such an applicant affirmative relief’. (See also, Wolf v Wolf, 50 AD2d 740.)
That policy is particularly appropriate in the case at bar, where Dr. Ritz’s failure to turn over Ms. Ritz’s mandated share of marital property has a priori reduced her ability to be self-supporting during the first six years after the divorce. The very property Justice Benson presumed she would incrementally acquire she still lacks. To make matters worse, Dr. Ritz has withheld her share during that same critical six-year period: (1) she has the weakest earning potential; (2) she was entitled to be receiving a maintenance figure based on her incremental receipt of her distributive share; and (3) she *435 would likely be using her sparse funds to pay for her education in order to become self-supporting. Finally, she does not have the benefit of her marital property share due only to petitioner’s complete and unexplained failure to turn over any of it as Justice Benson ordered.
To now open the courtroom doors to a delinquent Dr. Ritz, and then reward him, all by dint of the death of respondent’s mother and her consequent inheritance, would be an abhorrent and unjust result no court should abide. Courts must not be made available to errant spouses for their affirmative use as economic battlefields in campaigns to worsen the lot of a former spouse who is already prejudiced by an unexplained and absolute default.
Settle order on notice, calculating the arrears currently due, and providing for the payment of arrears, retroactive to the date of the petition, at the rate of $35 per week.