635 So.2d 1012 (1994)
BOARD OF PENSION TRUSTEES OF THE CITY GENERAL EMPLOYEES PENSION PLAN, CITY OF JACKSONVILLE, FLORIDA, PENSION PLAN ADMINISTRATOR, Appellant,
v.
Jose E. VIZCAINO, Sr., and Anna I. Vizcaino, n/k/a Anna I. Bagley, Appellees.
No. 93-1352.
District Court of Appeal of Florida, First District.
April 22, 1994.
*1013 Charles W. Arnold, Jr., General Counsel, Bruce Page, Asst. General Counsel, Jacksonville, for appellant.
Michael V. Mattson, Jacksonville, for appellee Bagley.
WEBSTER, Judge.
Appellant, administrator of the City of Jacksonville's General Employees Pension Plan, seeks review of a final order in a dissolution of marriage action. That order granted the motion of one former spouse for enforcement of a Qualified Domestic Relations Order (QDRO) directing appellant to pay to that spouse a portion of the other spouse's retirement pension benefits as a part of the trial court's plan for equitable distribution of the parties' marital assets. Appellant argues that the Pension Plan, which was created by a special act of the legislature, contains an anti-alienation clause which the trial court's order would compel appellant to violate. Appellant argues, further, that the trial court's order cannot be justified under either federal or state law. Therefore, according to appellant, the trial court lacked the power to order appellant to pay to one former spouse a portion of the other former spouse's retirement pension benefits as a part of a plan for equitable distribution of marital assets. Because we agree with appellant, we reverse.
In October 1992, a consent final judgment was entered dissolving the marriage of Anna and Jose Vizcaino. As a part of the plan for equitable distribution of the parties' marital assets, the trial court ordered that Anna receive directly from Jose's former employer, the Jacksonville Electric Authority, three percent of Jose's net retirement pension benefits. The final judgment also reserved jurisdiction to enter a QDRO. Such a QDRO was subsequently entered, directing that the Jacksonville Electric Authority pay to Anna three percent of Jose's net retirement pension benefits.
Employees of the Jacksonville Electric Authority are employees of the City of Jacksonville, and members of the City's General Employees Pension Plan. In subsequent communications between Anna's attorney and an attorney in the City's Office of General Counsel, the parties were unable to agree regarding the trial court's power to order appellant to pay a portion of Jose's retirement pension benefits to Anna. Accordingly, Anna filed a motion to enforce the QDRO. After having received legal memoranda and heard argument from the parties, the trial court entered the order which is the subject of this appeal, directing appellant to comply with the QDRO. The trial court concluded that no federal law gave it the authority to require appellant to make payments to Anna. However, it concluded, further, that, as a matter of state law, appellant was required to honor the QDRO. The basis for this latter conclusion was as follows:
The crux of the issue therefore becomes the interplay between the Pension Plan's statutory anti-alienation provision (Section 8 of the 1937 legislation) and the more recently passed legislation in Chapters 61 and 222, Florida Statutes. This Court expressly concludes that Sections 61.075, 61.076, and 222.21, Florida Statutes, implicitly repealed Section 8 of Chapter 18610 (1937), Special Acts of the Legislature of the State of Florida (the City's pension anti-alienation provision) at least to the extent so as to permit the spouse of the City's retired employee to directly receive the equitable distribution of the retirement pay which is *1014 marital property in a dissolution proceeding pursuant to a qualified domestic relations order.
On appeal, appellant argues that the QDRO is a creature of federal law, and that it cannot be enforced against appellant because the act in which it was created does not apply to government pension plans. It argues, further, that while an anti-alienation clause such as that contained in the City's Pension Plan can be repealed or modified by implication by a subsequent general act which is either a general revision of the whole subject or is so irreconcilable with the anti-alienation clause as to manifest a clear legislative intent to do so, no such statute has been passed. In response, Anna concedes that government pension plans are exempt from the federal law in which the QDRO was created. However, she insists that the trial court correctly concluded that the anti-alienation clause contained in the City's Pension Plan was repealed by implication by the subsequent passage of sections 61.075, 61.076 and 222.21, Florida Statutes. We find ourselves persuaded by appellant's arguments.
One of the express purposes of the Employee Retirement Income Security Act (ERISA), passed by Congress in 1974, is protection of the interests of participants in employee benefit plans. Employee Retirement Income Security Act of 1974, Pub.L. No. 93-406, § 2, 88 Stat. 832 (codified at 29 U.S.C. § 1001). In general, ERISA preempts state laws addressing subjects covered by it. 29 U.S.C. § 1144(a). As originally enacted, ERISA required that all pension plans to which it applied provide that benefits could not be assigned or alienated. Employee Retirement Income Security Act § 206(d). In 1984, by amendment, an exception to that rule was created, permitting assignment or alienation of benefits when a QDRO (as defined in the act) had been entered. Retirement Equity Act of 1984, Pub.L. No. 98-397, § 104(a), 98 Stat. 1433 (codified at 29 U.S.C. §§ 1056(d)(3) & 1144(b)(7)). However, the QDRO exception to the prohibition against assignment or alienation of pension benefits is of no assistance to Anna because, as the parties correctly recognize, "governmental plans" (defined as including plans established or maintained by a political subdivision of a state) are expressly excluded from ERISA coverage. 29 U.S.C. §§ 1003(b)(1) & 1002(32). Although conceding this point, Anna asserts that the order enforcing the QDRO may, nevertheless, be upheld as an income deduction order valid against appellant under state law.
The City's Pension Plan was created by special act of the legislature. Ch. 18610, Laws of Fla. (1937). Section 8 of that Act reads: "Pensions under this Act are not assignable or subject to any legal process." In Florida, a special act of the legislature may be repealed by implication by a subsequent general act when the latter either is a complete revision of the entire subject or is so irreconcilable with the special act as to manifest a clear legislative intent to do so. E.g., Jackson v. Consolidated Government, City of Jacksonville, 225 So.2d 497 (Fla. 1969). Anna argues that the anti-alienation clause of the City's Pension Plan was impliedly repealed by the subsequent adoption of sections 61.075, 61.076 and 222.21, Florida Statutes. We are unable to agree.
We fail to see the relevance of section 222.21, Florida Statutes (1991), to the issue involved here. That section is a part of title XV, entitled "Homestead and Exemptions," and of chapter 222 thereunder, entitled "Method of Setting Apart Homestead and Exemptions." Section 222.21(2) provides merely that, while sums payable to a debtor from an ERISA-qualified plan are generally exempt from creditors' claims, they are "not exempt from the claims of an alternate payee under a qualified domestic relations order." § 222.21(2)(b), Fla. Stat. (1991). There is certainly nothing about this statute which is so irreconcilable with the anti-alienation clause of the City's Pension Plan as to manifest a clear legislative intent to repeal that clause.
To the extent relevant here, section 61.075, Florida Statutes (1991), merely provides that all interests in retirement or pension plans (whether vested or not) which accrued during the marriage are marital assets subject to equitable distribution. It says nothing about whether the trial court may require that payment of any portion of such an interest *1015 equitably distributed to the non-participant spouse be made by the retirement or pension plan to the non-participant spouse. Section 61.076 reiterates that all interests in retirement or pension plans (whether vested or not) which accrued during the marriage are marital assets subject to equitable distribution. It then sets forth the procedure to be followed by the trial court when a military pension is involved. (Federal law expressly authorizes payment to one former spouse of alimony and child support, and of sums intended as a division of property, from the other former spouse's military pension, when ordered by a court. 10 U.S.C. § 1408. The provisions of section 61.076(2) and (3) are intended merely to assure that trial court orders include the information required by federal law.) We find nothing in either statute to manifest a clear legislative intent to repeal the anti-alienation clause of the City's Pension Plan.
Section 61.1301, Florida Statutes (Supp. 1992), addresses the use of income deduction orders as a means of collecting sums due on account of orders entered in domestic litigation. That section has been held to be irreconcilable with and, therefore, to repeal an anti-alienation clause contained in a municipal police and firefighters' pension plan created by special act of the legislature. Alvarez v. Board of Trustees, 580 So.2d 151 (Fla. 1991).
In Alvarez, the Board of Trustees of the City Pension Fund for Firefighters and Police Officers in the City of Tampa challenged an income deduction order entered pursuant to section 61.1301 which required that it deduct from a participant's pension benefits child support payments. The court noted that section 61.1301 "contain[ed] the complete chapter 61 mechanism for income deduction." Id. at 153. Because section 61.1301(1)(b)1. expressly provided that an income deduction order may "[d]irect a payor to deduct from all income due and payable to an obligor the amount required by the court to meet the obligor's [alimony or child] support obligation" and section 61.046(4) defined "income" as including "retirement benefits" and "pensions" paid by "any unit of local government," the court concluded that section 61.1301 was sufficiently irreconcilable with the pension plan's anti-alienation clause to manifest a legislative intent to repeal the latter. Accordingly, it held that the trustees of the plan could be ordered to deduct child support payments from a participant's pension benefits, pursuant to section 61.1301.
However, Alvarez is of no assistance to Anna because (1) it states that section 61.1301 "contains the complete chapter 61 mechanism for income deduction"; and (2) section 61.1301 is expressly limited in its application to collection of alimony and child support. The QDRO (income deduction order) entered by the trial court in this case was not for the collection of either alimony or child support. Rather, it was expressly for the purpose of effectuating the trial court's plan for equitable distribution of the parties' marital assets. Accordingly, we conclude that appellant is correct when it insists that, although the QDRO would have been enforceable as an income deduction order under section 61.1301 had it been for collection of either alimony or child support, it cannot be used to force direct payment to Anna of a portion of Jose's pension benefits in order to achieve an equitable distribution of the parties' marital assets.
We express no view regarding the advisability of a legislative scheme which permits the use of income deduction orders to enforce direct payment from government pension plans of sums designated as alimony or child support, but not of sums intended to achieve an equitable distribution of the parties' marital assets. That is an issue for the legislature. It is our responsibility to interpret what the legislature has written. However, we note that, should the legislature conclude that no valid basis exists for such a distinction, the problem can easily be corrected by amendment of section 61.1301 to include payments ordered to achieve an equitable distribution of the parties' marital assets as well as payments of alimony and child support. In the meantime, Anna is not without a remedy. Jose can be ordered to pay to Anna the allotted portion of his pension benefits each month upon receipt, through the local Domestic Relations Depository, and cited for contempt should he fail to do so.
*1016 For the foregoing reasons, the order of the trial court enforcing the QDRO against appellant is reversed.
REVERSED.
BOOTH and ALLEN, JJ., concur.