833 So.2d 230 (2002)
BOARD OF TRUSTEES OF the ORLANDO POLICE PENSION PLAN, et al., Appellants,
v.
Sue Carroll LANGFORD, et al., Appellees.
No. 5D02-91.
District Court of Appeal of Florida, Fifth District.
December 20, 2002.
*231 James B. Loper, Tampa, for Appellants.
Charles R. Trulock, Jr., Orlando, for Appellees.
PER CURIAM.
The Board of Trustees of the Orlando Police Pension Plan ("The Board") and G. Michael Miller, Plan Administrator of the City of Orlando Police Pension Plan, appeal from an order rendered by a trial judge in a post-dissolution marriage proceeding which required the Plan Administrator to pay one-half of a former employee's pension benefits to his former spouse as part of a plan of equitable distribution. We reverse, but certify a question as one of great public importance to the Florida Supreme Court.
The former employee in this case, Thomas Langford, and his wife, Sue, were divorced on April 11, 1989. The final judgment of dissolution required him to pay her $350.00 per month in permanent alimony and it incorporated by reference a settlement agreement entered into by the parties. With regard to the pension, the settlement agreement provided:
5. RETIREMENT PENSION. The parties acknowledge that the Husband is vested in a Retirement Plan through the Orlando Police Department and that said Retirement Plan is a marital asset subject to equitable distribution between the parties. Accordingly, the parties agree that the Wife shall be entitled to fifty (50%) percent of the value of the Retirement Plan as of the date of the dissolution of marriage and that through the entry of a Qualified Domestic Relations Order, fifty (50%) percent of the Husband's retirement account balance at the date of the dissolution of marriage shall be placed in separate account in the name of the Wife to be invested and administered separately from that of the Husband. At the Wife's option she may elect to take her share in a lump sum upon written notification to the plan administrator or may allow her portion of the retirement plan to be administered according to the plan separately from the funds of the Husband to be distributed to her at such time as the Husband is entitled to distribution from the plan.
The former wife waited until Langford retired and then moved for entry of a Qualified Domestic Relations Order (QDRO) pursuant to the settlement agreement. The court entered an apportionment order requiring the administrator of the pension plan to make monthly payments to the former wife of an amount equal to her fifty percent interest in the accrued benefits as of April 11, 1989. It recognized the payments were being made as part of "the equitable distribution of marital assets" between the parties.
Langford appealed, arguing the settlement required a one-time payment of onehalf of the yearly pension benefits, payable over twelve months, and not annual payments. This court affirmed, requiring ongoing payments every year. Langford v. Langford, 792 So.2d 473 (Fla. 5th DCA 2001).
On December 18, 2000, the Board and Plan Administrator petitioned the trial court to clarify or dissolve the apportionment order. They argued, as they do here, that under Florida and federal law, QDRO's cannot be used to force direct payment to a non-participating spouse of a part of a participating spouse's municipal *232 pension benefit as part of an equitable distribution plan. They point to section 15 of the city's pension plan and section 185.25, Florida Statutes, which apply to this pension plan.
Section 15 provides that pension payments are not assignable or subject to garnishment, execution, levy or attachments, but are subject to court orders to pay child support or alimony. Equitable distribution orders are not expressly included:
(1) Except as provided in subsections (2) and (3) of this section, none of the moneys, [sic] pensions, or other benefits mentioned in this retirement plan shall be assignable, either in law or in equity, or be subject to execution, levy, attachment, garnishment, or other legal process.

(2) The right of a member to a pension, to the return of accumulated member contributions, or to any other benefit under the provisions of this retirement plan shall be subject to an award by a court of competent jurisdiction pertaining to alimony or child support, if so provided under applicable Florida law. If an award or order requires the retirement plan to withhold payment of a pension, accumulated member contributions, or other benefits from the person to whom it is due, or requires the retirement plan to make payment to a spouse, former spouse or child, the withholding or payment provisions of the award shall be effective only against the amounts as they become payable to the individual being paid the pension or other benefit. These limitations shall not apply to accumulated member contributions of an individual who is neither a participant or a vested former participant. (emphasis supplied)
Section 185.25 makes the following exempt from tax and execution:
For any municipality, chapter plan, local law municipality, or local law plan under this chapter, the pensions, annuities, or any other benefits accrued or accruing to any person under any municipality, chapter, plan, local law municipality, or local law plan under the provisions of this chapter and the accumulated contributions and the cash securities in the funds created under this chapter are exempt from any state, county, or municipal tax of the state, and shall not be subject to execution or attachment or to any legal process whatsoever and shall be unassignable. (emphasis supplied)
The trial court ruled that Langford had waived the anti-alienation provisions of the pension plan and section 185.25, Florida Statutes, by agreeing in the settlement to divide the plan as part of an equitable distribution of his and his wife's marital assets, and by his agreement to entry of an appropriate apportionment order. This appeal followed.
The leading case on using a QDRO to force direct payment to a spouse of a portion of a municipal pension plan as part of the parties' equitable distribution of marital assets is Board of Pension Trustees of the City General Employees Pension Plan v. Vizcaino, 635 So.2d 1012 (Fla. 1st DCA 1994). As in this case, the plan in Vizcaino was created by the Legislature and it also contained an anti-alienation provision. As part of an equitable distribution of the parties' assets, the trial court entered a QDRO which required the municipal employer to pay the former wife a percentage of the former husband's net retirement pension benefits. The Vizcaino court agreed with the employer that it could not be ordered to pay the former wife pension benefits directly in order to achieve an equitable distribution of marital assets. It expressly rejected the argument that the order could be upheld under *233 Florida law under section 61.1301, since that statute authorizes the use of income deduction orders to collect alimony and child support. It also rejected the argument that the anti-alienation provisions of the city's plan had been implicitly repealed by the enactment of a variety of later statutes, including those under chapter 61, which establish that pensions are marital property if earned during the course of a couple's marriage.
Accordingly, the Vizcaino court reversed the trial court's order which required direct payment to the former wife. However, it agreed the assets in the plan were marital and subject to equitable distribution, although they could not be transferred to the former wife. It concluded the former wife was not completely without a remedy. It stated the former husband could be ordered to pay the former wife her allotted portion of the pension each month, upon receipt, and that the order was enforceable by contempt.[1]Accord Weber v. Weber, 783 So.2d 333 (Fla. 1st DCA 2001) (pension of former husband who was employed as city fireman was not subject to a qualified domestic relations order in order to effect equitable distribution).
Vizcaino has been followed by the Second District Court of Appeal. See Edwards v. Edwards, 819 So.2d 837 (Fla. 2d DCA 2002) (a QDRO could not be used to force direct payment to a nonparticipating spouse of a portion of a spouse's municipal pension benefits in order to achieve an equitable distribution). It has also been cited with approval by the Second and Third District Courts of Appeal for the general proposition that income deduction orders are not available to achieve an equitable distribution of marital assets. See Motil v. Motil, 771 So.2d 1251 (Fla. 2d DCA 2000) (income deduction orders cannot be used to achieve equitable distribution of pension); Silversmith v. Silversmith, 797 So.2d 653 (Fla. 3d DCA 2001) (income deduction order garnishing husband's wages reversed when used to effectuate equitable distribution); Colligan v. Colligan, 759 So.2d 688 (Fla. 3d DCA 2000) (income deduction order cannot be used to effectuate equitable distribution). This court has cited Vizcaino only tangentially, noting in one case that the order under review did not violate Vizcaino. See Abernethy v. Fishkin, 638 So.2d 160 (Fla. 5th DCA 1994) (noting that order entered by trial court did not purport to assign federal FSI benefits to wife, in violation of Vizcaino). By contrast, the Fourth District in McDonald v. McDonald, 731 So.2d 132 (Fla. 4th DCA 1999), held that the trial court was entitled to enter an order which was the "functional equivalent" of a QDRO to effect an equitable distribution of a municipal pension, without any reference to Vizcaino. However, there is no indication that the pension in McDonald contained anti-alienation provisions and the pension plan agreed to honor an alternative order.
We reluctantly agree with Vizcaino that we are not authorized in the construction of a statute to create exceptions not specifically made. The special act creating the pension and section 185.25 purport to make the benefits wholly "unassignable," even to spouses, unless the award is for *234 alimony or child support. We are bound by the plain language of the statute and special act. Accord Department of Administration v. Albritton, 489 So.2d 228 (Fla. 5th DCA 1986); McClung v. McClung, 465 So.2d 637 (Fla. 2d DCA 1985); Buzzard v. Buzzard, 412 So.2d 388 (Fla. 2d DCA), rev. denied and rev. dismissed, 419 So.2d 1195 (Fla.1982). However, these provisions may be irreconcilable with Florida's equitable distribution laws. See Alvarez v. Board of Trustees of City Pension Fund for Firefighters and Police Officers, 580 So.2d 151 (Fla.1991).
We note that a majority of other state courts have found like anti-assignment or alienation provisions inapplicable to bar equitable distribution of pension benefits, or invalid to the extent they conflict with equitable distribution laws, like Florida's, which make such pension assets marital and require equitable distribution to the marital parties.[2] Section 61.075(5)(a)4., Florida Statutes (2000) defines marital assets and liability to include:
All vested and nonvested benefits, rights and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation and insurance plans and programs.
The crux of the out-of-state decisions is the logical conclusion that no matter how broadly stated, anti-alienation provisions are spendthrift protections designed to bar claims made by creditors but not claims made by a spouse in a community *235 property state or an equitable distribution state. A spouse or former spouse should not be treated as the equivalent of a creditor in a dissolution proceeding, but rather as the true owner of his or her portion of pension benefits. Indeed that is how the majority of pension plans are dealt with by the courts in Florida. Why should municipal or local law pensions be treated differently?
Because the Florida Supreme Court has not had an opportunity to address this issue and because it is a recurring problem in resolving family law cases, we certify the following question as one of great public importance:
DO THE EXEMPTIONS FROM ALIENATION, ASSIGNMENT AND EXECUTION IN SECTION 185.25, FLORIDA STATUTES, BAR A COURT FROM ORDERING DIRECT PAYMENTS FROM A MUNICIPAL PENSION PLAN TO A FORMER SPOUSE AS PART OF AN EQUITABLE DISTRIBUTION OF MARITAL ASSETS ORDERED BY A DISSOLUTION COURT OR PROVIDED FOR IN A MARITAL SETTLEMENT AGREEMENT?
Accordingly, we reverse and remand this cause to the trial court. Being a court of equity, it is entitled to devise a remedy through other means to safeguard the former wife's interest in the pension which is rightfully hers, and to insure she receives the funds which are hers. It may be possible to construct a decree which requires payment of the pension funds to a trustee to be held in a joint account for the parties' joint benefit, and requires the trustee to distribute the funds when received to the party entitled to them. Or perhaps the former husband could be required to post a bond with the court to ensure the former wife receives her share of the funds on a timely basis. Failing that, the court is also free to reconsider the total equitable distribution and alimony scheme contemplated by the original decree and settlement, since a key portion of the total plan cannot now be achieved.[3] However, these are cumbersome devices and costly. There ought to be a better remedy.
REVERSED and REMANDED; QUESTION CERTIFIED.
THOMPSON, C.J., and SAWAYA, J., concur.
SHARP, W., J., concurs in part and dissents in part with opinion.
SHARP, W., J., concurring in part and dissenting in part.
Having written the foregoing opinion with which I agree, I now depart by way of dissent because I think this case can be distinguished from Vizcaino on the ground that the former husband in this case waived his statutory exemption under section 185.25 and the plan, by entering into a marital settlement agreement in which he expressly agreed the pension was a marital asset and that it should be distributed to the former wife by various means, including the one sought to be implemented by the trial court.
The Board and Plan Administrator argue that the former husband was barred from waiving his exemptions under the statute as part of the settlement agreement.
I disagree. Florida recognizes that the right to contract is limited by public policy and if a private agreement contravenes an established interest of society, or has a tendency to be injurious to public welfare, it is void as against public policy. Coastal *236 Caisson Drill Co. v. American Caves. Corp., 523 So.2d 791 (Fla. 2d DCA 1988). Additionally, Florida law recognizes that an individual cannot waive the protection of a statute that is designed to protect both the public and the individual. Id. at 793. Relying on these principles, the Florida Supreme Court refused to enforce an agreement providing for waiver of a homestead exemption because the waiver was against public policy. See Sherbill v. Miller Mfg. Co., 89 So.2d 28 (Fla.1956) (homestead exemption could not be waived by debtor as part of consideration for loan which did not involve exceptions set forth in constitution; court refused to enforce waiver on public policy grounds).
But, a waiver in favor of a former spouse to implement the distribution of marital assets is not against public policy of the state. Section 61.075 clearly designates this pension as a marital asset, i.e., the former wife's property. And it also provides that the judgment of dissolution shall have the effect of a duly executed instrument of conveyance. § 61.075(4), Fla. Stat. There is no public policy I am aware of that prevents a court from effectively transferring possession of an asset from a person who does not own it, to one who does under equitable circumstances. See § 61.075(9), Fla. Stat. In my view, the purpose of similar statutory or constitutional exemptions is to protect not only the employee but also his or her family. See, e.g. Spadaro, 115 Misc.2d 494, 454 N.Y.S.2d 374; D'Avignon v. Graham, 113 N.M. 129, 823 P.2d 929 (1991). Thus, I conclude Florida public policy does not bar a waiver of the statutory exemption when executed in favor of a spouse, as part of a plan of equitable distribution of marital assets.
Myers v. Lehrer, 671 So.2d 864 (Fla. 4th DCA), rev. denied, 678 So.2d 1287 (Fla. 1996) lends support to this conclusion. Myers involved a marital settlement agreement which required the sale of the parties' marital residence and provided that "the Husband shall satisfy any and all outstanding judgments pending against him from his share of the proceeds received from the sale of the marital property." Id. at 865. At the time of the judgment of dissolution, the former husband had two outstanding recorded judgments against him totaling more than $55,000.00. Following the sale of the marital residence, the former husband refused to pay off the judgments and claimed the proceeds were protected by his constitutional homestead exemption. The trial judge ordered him to pay the judgments out of the proceeds. On appeal, he argued his waiver of his homestead exemption in the settlement was invalid.
The fourth district disagreed on the ground that the party to be benefitted by the waiver in Myers was not a "hard creditor," and the waiver served the purpose of resolving the financial matters of the parties' former marital relationship. The court concluded: "To allow appellant in this case to disavow the clear language of his agreement incorporated in the divorce decree is to permit the homestead exemption to be an instrument of dishonesty." Id. at 866.
Similarly in this case, if the former husband is permitted to disavow his agreement incorporated in his divorce decree, it permits him to use the exemption in the pension statute as an instrument of dishonesty. A waiver of the exemption in favor of a dependant, to enable a transfer of assets belonging to the former spouse to that spouse, does not violate the public policy of this state, particularly since Florida expressly provides for equitable distribution of pension benefits as marital assets *237 to the respective spouses, and thus it should be upheld.
NOTES
[1] Query whether this is an illusory remedy. The process is so costly and time-consuming as to make it almost an illusionary remedy particularly in cases involving relatively small sums due on a monthly basis. In this case, the former wife was entitled to receive $370.76 per month when the first monthly retirement benefit payment was actually made to the former husband. Further, the assumption that the contempt process is available to enforce an award of equitable distribution is a leap of faith. Hertrich v. Hertrich, 643 So.2d 115 (Fla. 5th DCA 1994); Veiga v. State, 561 So.2d 1335 (Fla. 5th DCA 1990).
[2] Haynes v. Haynes, 148 Ariz. 191, 713 P.2d 1249 (Ct.App.1984) (police pension plan benefits were community property, subject to division, despite anti-alienation statute; antialienation provisions were intended to protect against creditors and not to preclude owner wife from asserting claim to community property); Foley v. Foley, 1997 WL 707104 (Conn.Super.Ct.1997) (unreported) (transfer of pension benefits to nonemployee spouse is not prohibited by anti-alienation clause); Golden v. City of Dover Police Pension Administrator, 1999 WL 33100137 (Del.Fam.Ct. 1999) (unreported) (police pension plan exempted from ERISA was subject to equitable distribution, despite anti-alienation provisions; former wife is not a creditor, but an alternative payee or co-owner); In re Marriage of Hackett, 113 Ill.2d 286, 100 Ill.Dec. 790, 497 N.E.2d 1152 (1986) (anti-alienation provisions were to protect firefighters and their beneficiaries from creditors, and did not prevent division of benefits between divorcing parties); In re Marriage of Sedbrook, 16 Kan. App.2d 668, 827 P.2d 1222 (1992) (anti-assignment or anti-alienation provisions of fireman's pension did not preclude award of benefits as equitable distribution); Prince George's County v. Burke, 321 Md. 699, 584 A.2d 702 (1991) (spouse was co-owner of benefits under plan and was not subject to antialienation provisions); Lindner v. Lindner, 137 Mich.App. 569, 358 N.W.2d 376 (1984) (taking pension into account in arriving at equitable distribution did not violate statute that exempts teacher's pension plan from execution, garnishment, attachment, or other legal process protects employee from creditors' claims); Spadaro v. New York City Police Department Pension Service, 115 Misc.2d 494, 454 N.Y.S.2d 374 (N.Y.Sup.Ct.1982) (pension fund was required to respect interest in pension awarded wife upon dissolution of marriage, despite anti-alienation provision applicable to pension; exemption did not apply to equitable distribution upon dissolution); Erb v. Erb, 1993 WL 264806 (Ohio Com.P1.1993) (unreported) (anti-alienation statutes do not bar retirement benefits from being divided in a divorce proceeding; parties do not have debtor/creditor relationship and pension rights are co-owned, not "owned" by one party to the other); Rice v. Rice, 762 P.2d 925 (Okla.1988) (anti-assignment statute protects member's benefits from creditors, not from inclusion in marital estate for purposes of equitable distribution); Collida v. Collida, 546 S.W.2d 708, 710 (Tex.Civ.App.1977) (spendthrift statute prohibiting assignment of benefits did not apply to division of community assets; provision was intended to protect against creditors, and wife was not creditor or assignee of husband upon dissolution). See also Annotation, Employee Retirement Pension Benefits as Exempt from Garnishment, Attachment, Levy, Execution, or Similar Proceedings, 93 A.L.R.3d 711 (1979).
[3] See McMahan v. McMahan, 567 So.2d 976 (Fla. 1st DCA 1990).