920 So.2d 16 (2004)
Joseph CAROLLO, Appellant,
v.
Maria Ledon CAROLLO, Appellee.
No. 3D03-464.
District Court of Appeal of Florida, Third District.
December 29, 2004.
Rehearing and Rehearing Denied January 24, 2005.
Marks & West, Miami; Cynthia L. Greene, Miami, for appellant.
Ira L. Dubitsky; Lauri Waldman Ross, Miami, for appellee.
Before SCHWARTZ, C.J., and LEVY and SHEPHERD, JJ.
Rehearing and Rehearing En Banc Denied January 24, 2005.
*17 PER CURIAM.
Joseph Carollo ("Husband") appeals from a Final Judgment and Dissolution of Marriage. Maria Ledon Carollo ("Wife") cross-appeals.
Husband and Wife were married in November 1985, and Wife petitioned for dissolution of the marriage in November of 2000. The parties have two minor children from the marriage. At issue on appeal are several rulings made by the trial court. Specifically, the court's finding that Husband's City of Miami "Elected Officers Retirement Trust" (EORT) was an asset subject to equitable distribution, and the court's valuation and distribution of Husband's EORT; the imputation of income against Husband for purposes of alimony and child support; the award of rehabilitative alimony to Wife to allow her to attend law school; and the attorney's fee award to Wife. The issues raised on cross-appeal concern the trial court's denial of Wife's request to order that Husband obtain life insurance to secure Wife's alimony award, and the court's denial of Wife's request for a QDRO (Qualified Domestic Relations Order) to secure the equitable distribution of Husband's EORT.
The court was faced with several issues regarding Husband's EORT; (1) whether the EORT was an asset or income, (2) how to value the EORT and compute the marital portion, and (3) whether the City of Miami's reduction of Husband's EORT after the court's ruling but before the entry of Final Judgment, should have been considered on rehearing, thereby allowing the court to recalculate the equitable distribution.
The trial court found that Husband's EORT was a marital asset subject to equitable distribution, placed a present value upon Husband's EORT, accepted Wife's expert's computation, and determined that Husband's interest in the EORT was $1,483,688.00, with the marital portion being $741,834.00. Consequently, the court found that from Husband's monthly payment of $9,404.63, the monthly marital portion was $8,180.80, and ordered Husband to pay Wife her share of the total value in sums of $4,090.40 per month.
The trial court announced its ruling regarding the EORT on June 7, 2002, and on June 10, 2002, supplemented its oral ruling with a letter to the parties' counsel. On July 25, 2002, before the court entered its written Final Judgment, the City Commission reduced the amount of Husband's monthly pension payments. In light of the reduction, Husband filed a Motion for Rehearing and New Trial. The trial court denied Husband's Motion for Rehearing on the ground that the court's "ruling" was non-modifiable because it was a "property provision." Additionally, the trial court denied argument that the issue was newly discovered evidence because it was not in existence at the time of trial.
With respect to the rehabilitative alimony, the Record reflects that Husband was the primary income source for the family during the marriage and that Wife held the family together and supported Husband's political career. Additionally, the court considered the fact that Husband owned and worked several companies and business ventures during the late 80s and early 90s; that Wife received her college degree in psychology in 1981 but worked primarily for Husband's business ventures; that in 1994, Wife was admitted to law school but did not pursue the education; and that Wife ultimately stopped working in 1995 to remain with the children. Thus, the trial court awarded rehabilitative alimony for a period of five years to Wife so that she may attend law school.
The trial court imputed income against both parties, finding that they were both *18 underemployed. The court found that Husband's monthly income was $5,314.23 ($4,090.40  Husband's half of the marital portion of his EORT + $1,223.83  Husband's non-marital interest in his EORT). The court found that credible evidence supported a finding that Husband could earn at least $95,000.00 per year working. Accordingly, the court imputed an annual income of $65,000.00 against Husband. With respect to Wife, the court found that Wife's monthly income is $4,090.40 (from the marital interest in Husband's EORT). The court found that Wife had the potential and history to earn approximately $25,000.00 and thus, imputed an annual income of $25,000.00 against Wife.
The court awarded attorney's fees to Wife, finding that Husband had the ability to pay her fees. The trial court also ordered Husband to maintain a $150,000.00 life insurance policy to secure child support, but did not require life insurance to secure Wife's rehabilitative alimony. Additionally, the trial court denied Wife's request for a QDRO to secure her equitable distribution of Husband's EORT. Husband appeals, and Wife cross-appeals. We find that only Husband's claims regarding the EORT and rehearing, and Wife's claims regarding the QDRO merit discussion.

EORT
Section 61.075(5), Florida Statutes, includes "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs" as a marital asset for purposes of equitable distribution. § 61.075(5)(a)(4), Fla. Stat. (2003); see also Acker v. Acker, 821 So.2d 1088, 1092 (Fla. 3d DCA 2002). In Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), the Supreme Court of Florida explained:
Whether the [pension] plan is contributory or noncontributory, the employee receives a lesser present compensation plus the contractual right to the future benefits payable under the pension plan. The value of those contractual rights will vary depending upon the number of years employed but where, as here, the rights are vested, or where they are matured, they have an actuarially calculable value. To the extent that they result from employment time after marriage and before commencement of a matrimonial action, they are contract rights of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property.
Diffenderfer, 491 So.2d at 267 (citing Majauskas v. Majauskas, 61 N.Y.2d 481, 474 N.Y.S.2d 699, 463 N.E.2d 15 (1984)). In the instant case, Husband receives disbursements from the City of Miami Elected Officer Retirement Trust (EORT) pursuant to section 40-296, City of Miami Municipal Code. The EORT is a non-contributory "retirement system" that was established "for the purpose of providing retirement benefits." City of Miami Municode, §§ 40-292, 40-295. Thus, Husband's EORT is, at least in part, a marital asset subject to equitable distribution pursuant to section 61.075, Florida Statutes.
The trial court possesses broad discretionary authority to do equity between the parties when making financial awards in dissolution proceedings. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). In Diffenderfer, the Court recognized that there are several means of valuing retirement and pension trusts. Diffenderfer, 491 So.2d at 269.
On the issue of valuation in the instant case, the trial court heard testimony from Wife's expert, an actuary, and Husband's *19 expert, a certified tax attorney. Husband argued, and his expert explained, that Wife should only be entitled to 25% of the full amount of the pension value; Husband's expert explained that the parties were married approximately fourteen years and that Husband served the City for seven years before he was married, and therefore, Husband proposed, the value of the pension should be divided in half (to represent the pre-marital portion) and the marital portion equally divided among the parties. Wife's expert, on the other hand, proposed valuing the non-marital portion of the trust, Husband's pre-marital interest in the trust prior to his marriage to Wife and his post-separation portion, subtracting husband's non-marital amount from the current value, and then dividing the sum equally between the parties. Wife's expert testified that Husband's interest in the trust as of May 1, 2002 was $1,483,668.00; that the martial portion was $741,834.00 (or $97,212.00 annually); that Husband currently received $9,404.63 per month and that $1,223.83 of the monthly disbursements was non-marital. The trial court accepted Wife's expert evaluation and accordingly, awarded Wife $4,090.40 of the pension, and Husband $5,314.23 ($1,223.83-nonmarital, plus $4,090.40).
Based on the testimony/evidence presented, and the case law regarding valuation of pensions and retirement funds, the trial court acted within its discretion in accepting Wife's expert's valuation testimony and distributing the property accordingly. Diffenderfer, 491 So.2d at 269.
The next issue raised by Husband concerns the trial court's denial of his Motion for Rehearing after the trial court rendered its oral pronouncement, but before the court entered its written order. Husband sought rehearing on the ground that the City of Miami recalculated his pension disbursement after realizing that it had considered back pay and other benefits when it initially calculated Husband's benefits. The trial court denied rehearing on the ground that a property distribution award could not be modified.
The Florida Rules of Civil Procedure provide for two mechanisms by which a trial court can reconsider and correct a prior decision. The first is the motion for rehearing of non-jury matters (or motion for new trial of matters heard by a jury), the purpose of which is to give the trial court an opportunity to consider matters which it overlooked or failed to consider, Pingree v. Quaintance, 394 So.2d 161 (Fla. 1st DCA 1981), and to correct any error if it becomes convinced that it has erred. Elmore v. Palmer First Nat'l Bank & Trust Co. of Sarasota, 221 So.2d 164, 166 (Fla. 2d DCA 1969); see also Fla.R.Civ.P. 1.530. The second mechanism is the motion for relief from judgment (or decrees or orders), which is limited to specific errors, including clerical mistakes, excusable neglect, fraud, and newly discovered evidence. Fla.R.Civ.P. 1.540.
In the instant case, Husband moved for rehearing pursuant to Rule 1.530, the trial court denied Husband's motion because "he has not alleged `newly discovered evidence,' but, instead is seeking to introduce evidence not in existence at the time of the trial, that is, a change in financial circumstances due to a post adjudication reduction of his pension." Contrary to the court's finding, Husband did not have to prove newly discovered evidence.
Florida Courts have consistently held that a timely filed Motion for Rehearing has the effect of suspending the validity of the Final Judgment since the judicial labor at the trial level did not come to an end. Slatcoff v. Dezen, 72 So.2d 800 (Fla.1954). In Elmore, 221 So.2d at 164, the Court explained that "a motion to rehear is not merely a vehicle by which the trial judge *20 can reconsider facts alone; rather, it provides a chance for the trial court to correct any error that it committed if it becomes convinced that it has erred. Since it is clearly within the trial court's power to alter a judgment for a limited period." Elmore, 221 So.2d at 166 (citing Florida Rule Civil Procedure 1.530).
In the instant case, the trial court orally ruled upon the distribution of Husband's EORT on June 7, 2002. Additionally, the Court supplemented its ruling by a letter to both counsel dated June 10, 2002. On July 25, 2002, the City of Miami reduced Husband's monthly pension benefits. The trial court's Order is dated December 30, 2002 (it is unclear when the Order was filed but, nevertheless, Husband's Motion for Rehearing was filed within 10 days of December 30, 2002). Fla. R. Civ. P. 1.530(b). Husband moved for rehearing of the equitable distribution issue on January 8, 2003. Clearly, at the time the court "entered" the Final Order, the court, and the parties involved, were aware that the City had corrected an error in the valuation of Husband's EORT. Thus, in light of the foregoing, the trial court abused its discretion in denying Husband an opportunity to show how his disbursement was affected by the City's recalculation of his pension on the ground that a property distribution order cannot be modified. Accordingly, we remand this matter for recalculation of the distribution of the EORT, considering the actual amount Husband receives.

QDRO
Section 185.25, Florida Statutes, exempts municipality or local law plans and pensions from "execution or attachment or [from] any legal process whatsoever and shall not be assignable." § 185.25, Fla. Stat. (2003). Courts have read Chapter 185 to prohibit QDRO's of any municipal pension benefits and have held that the only remedy is for the trial court to order payment of the spouse's allotment each month, enforceable by contempt. Board of Tr. of the Orlando Police Pension Plan v. Langford, 833 So.2d 230 (Fla. 5th DCA 2002); Board. of Pension Tr. of the City Gen. Employees Pension Plan v. Vizcaino, 635 So.2d 1012 (Fla. 1st DCA 1994). Additionally, this Court has generally held that income deduction orders are not available to achieve an equitable distribution of marital assets. Silversmith v. Silversmith, 797 So.2d 653 (Fla. 3d DCA 2001); Colligan v. Colligan, 759 So.2d 688 (Fla. 3d DCA 2000)(recognizing that income deduction order pursuant to section 61.1301, Florida Statutes, is limited to collection of child support and alimony, and not appropriate to secure equitable distribution).
In the instant case, section 40-297 of the Miami Dade Municipal Code, prohibits the assignment or garnishment of the plan, except with respect to alimony, child support, or medical payments to a former spouse. City of Miami Municode, § 40-297. Thus, where the applicable City Code expressly limits the assignability of any pension or retirement fund to collection of alimony, child support, and medical payments, a QDRO cannot be used to force direct payment of Husband's EORT in order to effectuate an equitable distribution of the parties' marital assets. See Vizcaino, 635 So.2d at 1015; see also Langford, 833 So.2d at 233-34. Accordingly, the trial court properly denied Wife's request for a QDRO to enforce the parties' equitable distribution.

CONCLUSION
In light of the foregoing, we reverse the trial court's denial of Husband's Motion for Rehearing and remand with directions that the court recalculate the equitable distribution of Husband's EORT, taking into *21 account the actual amount the City distributes to Husband. We affirm the other issues raised by the parties on appeal.
Reversed and remanded with directions.