# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————————

Case No. 5D2025-0118
LT Case No. 2010-DR-001847

———————————————————

TOBY PALMER,

    Appellant,

    v.

SUZANNE MARIE PALMER,

    Appellee.

———————————————————

On appeal from the Circuit Court for Seminole County.
Mark Edward Herr, Judge.

Michael M. Brownlee and Allison Morat, of The Brownlee Law Firm, P.A., Orlando, for Appellant.

Annabelle S. Catania, Winter Garden, for Appellee.

April 10, 2026

PER CURIAM.

    AFFIRMED.

WALLIS and KILBANE, JJ., concur.
LAMBERT, J., concurs with opinion.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

LAMBERT, J., concurring.

The parties to this appeal are former spouses. Their long-term marriage was dissolved in 2010 by a final judgment that incorporated the parties' Marital Settlement Agreement ("MSA"). At the time, Former Husband was employed as a firefighter with the City of Lake Mary, Florida, with which he had a "pension plan."

The parties' MSA acknowledged that Former Husband's pension plan was a marital asset, and they specifically agreed that "[Former Wife] has a vested interest in the plan." The MSA provided that Former Husband would maintain Former Wife "as the beneficiary of this plan" and further provided that "once monthly distributions of [Former Husband's] pension plan commence, [Former Wife] shall receive forty percent (40%) of said payments and [Former Husband] shall receive sixty percent (60%) of said payments." The parties also agreed that if a qualified domestic relations order ("QDRO"), or its functional equivalent, "was necessary to transfer ownership of any profit sharing, 401K, pension, retirement, or similar plans," they would cooperate with each other to obtain the QDRO or its functional equivalent as may be reasonably required by the plan administrator.

In 2022, Former Husband retired from the Lake Mary Fire Department. The subsequent dispute between the parties that became the primary subject of both the litigation below and this appeal was whether Former Wife's interest in the pension plan was limited to that which had accrued from the time of the parties' marriage in 1988 until they divorced in 2010 or, as Former Wife argued, whether the MSA provided that her interest and payment would be based on what had accumulated or accrued in the plan up until Former Husband retired in 2022.

The trial court ruled in favor of Former Wife. It found that the parties had negotiated a property settlement that was more generous than that which a court may have been able to do, but that the parties were free to do so. *See Dills v. Perez*, 330 So. 3d

3

989, 990 & n.2 (Fla. 5th DCA 2021) (providing that unless the terms of a marital settlement agreement violate public policy or are not in the best interests of the minor children, the parties are free to enter into contractual agreements that include provisions that no court could impose). The trial court ordered that Former Wife was to "receive 40% of the pension benefits that Former Husband receives each month, less taxes, if any."

Former Husband's primary argument here for reversal was that the trial court erred in its interpretation of the MSA. The majority has affirmed, without discussion, on this issue, with which I concur.

I write to address the second issue raised by Former Husband in this appeal. Former Husband contends that the trial court reversibly erred when it directed that an Income Deduction Order ("IDO") be entered so that Former Wife receives the above-described monthly payment "directly from the Pension Plan Administrator."

Former Husband argues that under section 185.25, Florida Statutes, municipality pensions such as his are exempt from execution, attachment, or any legal process whatsoever; therefore, an IDO cannot be used by a trial court as a mechanism to equitably distribute this asset.

Though Former Husband cites to section 185.25, an almost identical statute involving municipal firefighters' pension funds provides:

> For any municipality, special fire control district, chapter plan, local law municipality, local law special fire control district, or local law plan under this chapter, the pensions, annuities, or other benefits accrued or accruing to any person under any chapter plan or local law plan under the provisions of this chapter and the accumulated contributions and the cash securities in the funds created under this chapter are hereby exempted from any state, county, or municipal tax and shall not be subject to execution or attachment or to any legal process whatsoever, and shall be unassignable.

4

§ 175.241, Fla. Stat.

In *Alvarez v. Board of Trustees of City Pension Fund for Firefighters & Police Officers in the City of Tampa*, 580 So. 2d 151 (Fla. 1991), the Florida Supreme Court addressed the interplay between section 175.241's exemption of a firefighter's pension fund from any legal process whatsoever and the subsequently-enacted sections 61.1301 and 61.046(4), Florida Statutes (1987), which, respectively, mandated the entry of income deduction orders for court-ordered alimony and child support and defined what "income" would be subject to an income deduction order. The court held that sections 61.1301 and 61.046(4) impliedly repealed section 175.241 such that a firefighter's pension benefits are not exempt from income deduction orders for the payment of alimony or child support. *Id.* at 154.

*Alvarez*, however, has no direct applicability here because the parties did not have any children from their marriage; and their MSA provided that neither party would receive alimony from the other. Instead, the monthly payment to be made by the IDO to Former Wife from the pension fund is to facilitate the equitable distribution of this asset.

Former Husband argues that caselaw holds this to be improper. *See Motil v. Motil*, 771 So. 2d 1251, 1251–52 (Fla. 2d DCA 2000) (holding that an income deduction order under section 61.1301 is limited to those payments involving alimony or child support and cannot be used to achieve the equitable distribution of the parties' marital assets); *Colligan v. Colligan*, 759 So. 2d 688, 689 (Fla. 3d DCA 2000) (holding "that an income deduction order could not be entered for the purpose of effectuating the trial court's plan for equitable distribution of the parties' marital assets" (citing *Bd. of Pension Trs. of City Gen. Emps. Pension Plan v. Vizcaino*, 635 So. 2d 1012, 1015 (Fla. 1st DCA 1994))). He also argues that it is of no moment or consequence if he agreed to the entry of an IDO for such purpose. *See Palmateer v. Palmateer*, 260 So. 3d 476, 477 (Fla. 2d DCA 2018) (holding that the trial court could not effect the equitable distribution of the husband's municipal pension plan through the imposition of an income deduction order in favor of the wife despite the husband's agreement to the entry of the order because it is statutorily foreclosed).

5

Former Wife responds that Former Husband never raised an objection below to the entry of an IDO, and our record shows that Former Wife is correct. During her argument to the trial court at the conclusion of the dispositive hearing, Former Wife asked the court to issue an IDO so that her monthly distribution "comes directly from the plan." Former Husband raised no objection to this request.

Former Husband also did not move for rehearing after the order on appeal was rendered. He thus failed to preserve this now-raised error for appellate review. *See Williams v. Williams*, 152 So. 3d 702, 704 (Fla. 1st DCA 2014) ("[W]here an error by the [trial] court appears for the first time on the face of a final order, a party must alert the court of the error via a motion for rehearing or some other appropriate motion in order to preserve it for appeal." (citations omitted)).

Unpreserved error can nevertheless be reversed if it constitutes fundamental error. *Yau v. IWDWarriors, Corp.*, 144 So. 3d 557, 560 (Fla. 1st DCA 2014) (holding that an appellate court cannot reverse an "unpreserved claim of error absent fundamental error" (citation omitted)). Yet, Former Husband's initial brief does not directly argue that fundamental error was committed, *see Wheeler v. State*, 87 So. 3d 5, 6 (Fla. 5th DCA 2012) ("Furthermore, the defendant did not raise a claim of fundamental error . . . in his initial brief; therefore, this court is not required to undertake a fundamental error analysis." (citations omitted)), though he does argue that, under the circumstances, the entry of an IDO was statutorily prohibited.

As articulated by the Florida Supreme Court, fundamental error is error "which goes to the foundation of the case or goes to the merits of the cause of action." *Sanford v. Rubin*, 237 So. 2d 134, 137–38 (Fla. 1970) (holding that it was not fundamental error to allow recovery of attorney's fees even though the constitutionality of the statutory basis for the fees was doubtful). The court also reminded that appellate courts "should exercise [their] discretion under the doctrine of fundamental error very guardedly." *Id.* at 137 (citations omitted).

Accordingly, applying the "very guarded" admonition in conjunction with the definition of fundamental error from *Sanford*,

6

the decision here by the trial court to issue an IDO does not appear to go either to the foundation of the case or the merits of the cause of action. In this fundamental error analysis, I also note that the IDO at issue has not actually been entered by the trial court, nor is there clear record indication that the Plan Administrator objects to the IDO. *Cf. Bd. of Trs. of Orlando Police Pension Plan v. Langford*, 833 So. 2d 230, 231–32 (Fla. 5th DCA 2002) (discussing a case in which a plan administrator separately petitioned to dissolve the trial court's order entered in the dissolution of marriage litigation that, consistent with the agreement of the former spouses, required the administrator to make ongoing payments to Former Wife under a QDRO as part of the equitable distribution of marital assets).

Finally, like our sister courts, I write to urge the Florida Legislature to consider specifically amending section 61.1301 to allow the use of an IDO to facilitate the equitable distribution of assets in dissolution of marriage cases. *See Vizcaino*, 635 So. 2d at 1015 ("However, we note that, should the legislature conclude that no valid basis exists for such a distinction [of permitting the use of IDOs to enforce direct payment from government pension plans of sums designated as alimony or child support, but not of sums intended to achieve an equitable distribution of the parties' marital assets], the problem can easily be corrected by amendment of section 61.1301 to include payments ordered to achieve an equitable distribution of the parties' marital assets . . . ."); *Palmateer*, 260 So. 3d at 478 (urging the legislature to consider allowing the equitable distribution of a municipal pension plan to a former spouse through an IDO).

Twenty-four years ago, our court noted numerous decisions from other states with similar statutes that prohibit the alienation of municipal pension plan funds where those out-of-state courts concluded that such statutes were intended to protect the municipal employee from creditors, not to preclude an ex-spouse from the equitable distribution of a martial asset. *Langford*, 833 So. 2d at 234 n.2. We queried why, in the context of the equitable distribution of a municipality pension fund marital asset, municipal pensions should be treated differently than other pensions. *Id.* at 235.

7

An IDO to enforce the equitable distribution of marital assets would appear to provide a straightforward remedy that could minimize continuing interaction between former spouses and reduce post-judgment enforcement litigation.